EDWIN WOOD AND SIMCOE CHAPMAN v. ARTHUR S. PIERSON.

*Lost property—Finder's right to identification—Reward for its recovery.*

It is a question of fact and not of law whether the finder of lost property has given fair and reasonable opportunity for its identification before restoring it and whether the claimant should have been given an opportunity to inspect it in order to decide whether it belonged to him. The jury's attention must be confined to the state of things preceding the beginning of suit.

In an action against the finder of lost property for its conversion by refusing to give it up, the fact that after suit was begun the finder learned that it really belonged to the claimant has no tendency to show that he had fair and reasonable evidence thereof before suit.

A right of action against the finder of property for which a reward has been offered is not defeated by neglect to tender the reward.

A finder of lost property has no lien upon it as finder after he knows to whom it belongs; but he has a lien upon it for whatever reward may be offered for its recovery.

A reward for lost property is not waived by insisting on its identification or any legal advantage connected with the finding.

Error to Bay. Submitted Oct. 14–15. Decided Jan. 19.

REPLEVIN. Defendants bring error. Reversed.

*Hatch & Cooley* for plaintiff in error. The finder of lost property is entitled to it as against everybody but the loser (*McAvoy v. Medina* 11 Allen 548; *M'Laughlin v. Waite* 9 Cow. 670; *Bridges v. Hawkesworth* 7 E. L. & E. 424; *Mathews v. Harsell* 1 E. D. Smith 393; *Chase v. Corcoran* 106 Mass. 286); and may sue for its conversion by third persons: 2 Kent's Com. 356; *Hendricks v. Decker* 35 Barb. 298; *N. Y. etc. R. R. Co. v. Haws* 56 N. Y. 175; but where a reward has been offered for it replevin will not lie against the finder unless it has been paid or tendered: *Wentworth v. Day* 3 Met. 352; *Cummings v. Gann* 52 Penn. St. 484; *Wilson v. Guyton* 8 Gill 213; *Preston v. Neale* 12 Gray 222; *Auditor v. Ballard* 9 Bush 572.

*Shepard & Lyon* for defendants in error. The finder of lost property cannot claim a reward for its recovery if he does not comply with the conditions on which it is offered; *Clanton v. Young* 11 Rich. 546 ; nor if he did not know it had been offered : *Howland v. Lounds* 51 N. Y. 604 ; *Fitch v. Snedaker* 38 N. Y. 248 ; *Stamper v. Temple* 6 Humph. 113 ; *Marvin v. Treat* 37 Conn. 96 ; nor if he detains the property on grounds distinct from that of a lien for the reward : 1 Addison Torts 408 ; *Boardman v. Sill* 1 Camp. 410 *n* ; *Hanna v. Phelps* 7 Ind. 21 ; *Dows v. Morewood* 10 Barb. 183 ; *Thatcher v. Harlan* 2 Houst. (Del.) 178 ; *Picquet v. M'Kay* 2 Blackf. 465 ; *Bean v. Bolton* 3 Phila. 87 ; *Holbrook v. Wight* 24 Wend. 169 ; *Everett v. Saltus* 15 Wend. 474 ; in which case the owner need not tender the reward before suing the finder : *Lacy v. Wilson* 24 Mich. 479 ; *Hazard v. Loring* 10 Cush. 267 ; *Appleton v. Donaldson* 3 Penn. St. 381 ; *Ashburn v. Poulter* 35 Conn. 553.

GRAVES. J.  Pierson sued in replevin and obtained judgment, and Wood and Chapman filed a bill of exceptions and brought error. The subject of the action was a breastpin found by Chapman and claimed by Pierson. Many of the facts are not disputed. Pierson lost at Bay City, July 18, 1878, a small diamond pin, which seems to have separated from the tongue in some unknown way. The circumstances of the loss and the manner in which the body of the pin and tongue became disunited are left unexplained. The metallic setting was a common pattern and the gem had no peculiarities to facilitate its identification by non-experts. Pierson caused a notice to be inserted in the *Tribune* newspaper published in the city, of this tenor :

" LOST.

" $25 REWARD—*Lost.*—A diamond pin. The finder will be paid the above reward by leaving the same at this office."

As will be observed the advertisement neither gave a description of the pin nor suggested who offered the reward.

Moreover, no means of any kind were provided for showing at the newspaper office the ownership or identity of the pin, or for connecting any pin which might be produced with the claim contained in the notice, nor was any money left with which to pay the reward, nor any provision whatever made for paying it there.

Chapman found a pin which was subsequently ascertained to be the one in question. His first impression was, when he picked it up, that it was a cheap trinket, but on second thought he decided to show it to a jeweler. Dirt was adhering to it, and attention was at once drawn to the fact that, although the tongue was wholly missing, the rivet was secure and firmly in its place. The query naturally arose as to how this condition of the pin and the absence of the tongue might be accounted for. But in order to find out whether it had any material value, Chapman took it immediately to Wood, the other defendant, he being a jeweler, and was by him told that the stone was a diamond, and that a diamond pin had been advertised in the *Tribune*.

On getting this information, Chapman went at once to the newspaper office and saw Mr. Shaw, the editor and manager, who showed him the advertisement and informed him who the author was. Mr. Shaw referred him for anything further to Mr. Pierson, and he at once carried the pin to Pierson's store and called for that gentleman. He was absent. Chapman was going from the city the next morning, and he told a clerk, Mr. Martin, that he had found a pin, and as he was going away, he would leave it at Mr. Wood's to be identified and returned to the owner. He then went to Wood's and there left it with instructions to give it to the person who should identify it and pay the reward, and to no one else. This was Friday evening, July 26th. The next morning he went from the city on business and only returned the Monday following at noon. During his absence Pierson called on Wood and asked to see the pin in order to identify it, and Wood declined and required him to identify it first. Pierson attempted to do so, but he failed to satisfy Wood, and in the judgment of another jeweler to whom both referred, and who had the

advantage of inspecting both the tongue and body of the pin and of comparing them, the physical appearances and indications were strongly against Pierson's claim.

In respect to what was said at these interviews there was want of harmony in the testimony. Pierson requested that another jeweler at Bay City who, he said, had formerly repaired the pin, and had a plaster cast of the stone and could identify it, might be permitted to see it. But Wood proposed that this gentleman should call with his mould and he, Wood, could then see for himself whether it fitted or not. The gentleman came but had no cast, and was unable to give a particular description, and Wood declined to show the pin to him. Pierson then proposed that the pin should be sent at his expense for the purpose of identification to Mr. Smith of Detroit, who, he said, had mounted it. This was declined and Wood suggested that Pierson should write to Smith for a description, an expedient he observed which would be attended with less risk, but this proposal was unacceptable to Pierson.

The testimony disagreed as to the incidents of the effort to get the question of identification settled through Mr. Smith, and in regard to what took place between Pierson and Chapman after the return of Chapman on the 29th. On Tuesday, the 30th of July, Pierson sued out the writ of replevin and went with the sheriff to Wood's store to get the pin. It was not produced and indeed was not then in the store, although the fact was not made known by Mr. Wood. It is unnecessary to recite the different versions of what took place. On the next morning, Wednesday the 31st, Mr. Chapman carried the pin to Detroit and satisfactorily ascertained at Mr. Smith's that it was the one advertised for by Mr. Pierson. He returned on Thursday, and on Friday, the day after, met the officer and handed the pin to him with the request to get the reward. Pierson refused to pay it, and on giving the usual replevin bond received the pin from the officer.

It has seemed proper to go into this detail on account of the singularities of the case. Yet it must not be assumed that

the outline given lends the exact coloring to the transaction which would be perceptible to a jury on hearing the whole testimony. At the first glance every one must admit that as to one feature of the case, at least, there can be no doubt. The facts are conclusive that the parties dispensed with the newspaper office as a place for doing what should be necessary in consequence of the reward. Pierson in the first place neglected preparations which were incumbent on him as a legal preliminary to holding Chapman to a compliance at that place, and Chapman did not insist on performance there. Both parties proceeded on the tacit understanding that whatever was to be done should be done elsewhere. So much is too clear to admit discussion and neither party is at liberty to claim any advantage on account of the omission to transact or perform at the printing office.

According to the common law the finder of goods lost on land becomes proprietor in case the true owner does not appear. And meanwhile his right as finder is a perfect right against all others. But if the true owner does appear, whatever right the finder may have against him for recompense for the care and expense in the keeping and preservation of the property, his *status* as finder only does not give him any lien on the property. Yet if such owner offer a reward to him who will restore the property, a lien thereon is thereby created to the extent of the reward so offered. This doctrine in favor of a lien in such circumstances is so laid down in *Preston v. Neale* 12 Gray 222, and authorities are cited for it. Among them is the leading case of *Wentworth v. Day*, by Chief Justice Shaw, reported in 3 Metcalf 352, and which is approved and followed by the Supreme Court of Pennsylvania in *Cummings v. Gann*, 52 Penn. St. 484, adopted as correct by Story in his work on Bailments, §§ 121a and 621a. Parsons has given it his sanction by incorporating it in the text of his work on Contracts (vol. 3, p. 239, 6th ed.), and Edwards presents it as settled law in his treatise on Bailments, §§ 20, 68 (2d ed.).

Under this principle the admission is unavoidable that when Pierson claimed the pin, on the footing of his notice

and reward, of Chapman, the finder, who was holding it for the actual owner, it was, as between them, subject to a lien in Chapman's favor and against Pierson for the reward. According to the language of the books Chapman was entitled to *detain* the article from Pierson until the reward should be paid, and was under no legal obligation to relinquish possession to him, or to give it to another, or to allow anything to be done endangering his right or security. But there was a mutuality of rights. As claimant, Pierson was entitled to a reasonable time and to fair and reasonable opportunity in reference to the nature of the chattel, the existing state of things bearing on the transaction and the surrounding circumstances, and without impairing Chapman's right as contingent owner, nor his right of lien, nor interfering with his duty to the true ownership which might be subsequently asserted by another, to make such a showing as he could that the property was the same he had lost and advertised, and such evidence as would satisfy a fair and reasonable person of the fact.

It was not for Chapman to baffle investigation by any unfair action or inaction or give way to unfounded and unreasonable suspicion and then object that the evidence of identification was not sufficient. Nor was it for Pierson to demand anything which was not fair and just under the circumstances, and needful for investigation and consistent with Chapman's rights and duties, and then make its refusal a pretext for charging injustice, and an excuse for making costs; and in regard to these and similar matters it was for the jury to say what was the conduct of the parties; whether it was fair and reasonable or otherwise; whether either or both materially deviated from the proper course; whether the kind of reciprocity the occasion called for was shown or not, and whether Chapman was bound or not to be satisfied of the rectitude of Pierson's claim when the suit was begun.

Whether as between the parties and in view of all the considerations bearing on their rights and duties and on the conveniences and inconveniences of identification growing out of the nature of the property, and bearing on the chances for

imposition, and on the fact of Chapman's being liable to account to whoever should at last be found to be actual owner, it was reasonably and fairly due to Pierson to have a personal inspection to enable him to say that the pin was or was not his property, and if he thought it was, then to facilitate his proof, was not a matter of law. It depended on the peculiarities of the case, and was a question for the jury under instructions conforming to the principles here explained.

For the purpose of judging with what propriety the parties acted, and whether Chapman was guilty of legal fault, the transaction must be contemplated as it was on the 30th of July when the action commenced. It is necessary to keep in mind what time had then been taken and what had been done about identifying the pin, and what evidence Chapman had of the validity of Pierson's claim. That satisfactory evidence was procured afterwards by Chapman, must not be taken to show that he had fair and reasonable evidence before, or that his prior conduct was unjust. In considering this aspect of the controversy it is necessary to confine attention to the facts and appearances manifested up to the time the writ was taken out. The question was then pending and unsettled.

The contention touching the right of action in the absence of any tender of the reward is of no practical importance on this record. Whether in point of fact Chapman waived or abandoned the reward itself, would be a question for the jury under proper instructions. Inasmuch as it belonged to Pierson to identify the property and pay the reward too, it is not reasonable to contend that because Chapman insisted on the identification he therefore waived the reward. The exaction of the first or even a firm stand on every legal advantage concerning identification would not imply relinquishment of the other. Unless the reward itself was in fact waived, or there was such behavior on the part of Chapman respecting Pierson's reclamation as was tantamount to a denial of Pierson's right and a wrongful detention, it is not perceived that there was any ground for holding that the lien was forfeited.

In *Isaack v. Clark* 2 Bulstrode 306, Lord Coke states the

law in this wise : " When a man doth finde goods, it hath been said, and so commonly held, that if he doth dispossess himself of them, by this he shall be discharged, but this is not so, as appears by 12 E. IV. fol. 13, for he which findes goods is bound to answer him for them who hath the property ; *and if he deliver them over to any one, unless it be unto the right owner*, he shall be *charged for them*, for at the first it is in his election, whether he will take them or not into his custody, but when he hath them, *one onely* hath then right unto them, and therefore he ought to keep them safely ; if a man therefore which findes goods, if he be wise, he will then *search out the right owner* of them, and so deliver them unto him ; if the owner comes unto him, ·and *demands them, and he answers him, that it is not known unto him whether he be the true Owner of the goods, or not, and for this cause he refuseth to deliver them, this refusal is no conversion, if he do keep them for him*."

Lord Coke very clearly enforces the right and duty of the finder to be certain of the true owner before he makes delivery. As he is bound to hold for the true owner, and is liable in case of misdelivery, the law makes it his duty as well as his right, even when there is no reward, to "search out," or in other language, find the "right owner," or see to it that he submits to no other than the "right owner." Undoubtedly if Chapman's conduct was such that a jury would, under the circumstances. of the case, feel satisfied that he was actually perverse and unreasonable, and pursued a course which was adapted to baffle fair investigation, instead of maintaining the attitude of a man whose duty it was, in the quaint terms of Lord Coke, to "search out the right owner," it would be just to regard him as having detained the property unlawfully.

The neglect to tender the reward, if it was still claimed, could not defeat the action. *Bancroft v. Peters* 4 Mich. 619.

The remedy of trover was originally given to enable the loser of goods to recover of the finder, and the principle has found recognition in one of the provisions of our action of replevin. Comp. L. § 6754. The statute expressly refers to

a case where one party is found to have a lien, and the other the general ownership, and the court is required to render such judgment as shall be just. The provision did not escape the attention of the court below. It was mentioned in the charge. The parties respectively ignored the statute concerning lost property and planted themselves on the common law, and hence there seems to be no occasion to notice the former.

The charge given by the learned judge was very elaborate. In some essential particulars it seems open to a construction not consistent with the views which are here explained. But it is not needful to specify the observations referred to.

It is enough to say now, that whatever may have been intended, the charge as we find it in the record must have been received by the jury as instructing them that the defendants were *bound* to submit the pin to the personal inspection of the plaintiff on his request, as a safe and proper expedient for the purpose of " searching out the right owner," and they could not have supposed that it was submitted to them to decide *according to their own judgment of the circumstances* whether the defendants ought or ought not to have allowed such inspection. The question was not for the bench but for the jury under suitable instructions.

The case has several features which demand a very strict adherence to the rule which restricts the province of the judge to the conveyance of such matters of law to the jury as the case calls for, and assigns to the jury the determination of all matters of fact. No doubt the unusual, if not unprecedented characteristics of the litigation, and the ordinary hurry of a trial, may explain all of the incidents which on careful review appear to be incapable of support.

The result reached is that the judgment must be reversed with costs and a new trial granted.

CAMPBELL, J. and MARSTON, C. J. concurred.

COOLEY J. did not sit in this case.