873 F.2d 641
 Manuel MERCADO, Plaintiff-Appellant,
v.
The U.S. CUSTOMS SERVICE, the Commissioner of Customs, the
Secretary of the Treasury, the Drug Enforcement
Administration, the Attorney General of the United States,
the Internal Revenue Service and the United States of
America, Defendants-Appellees,
UNITED STATES of America, Third-Party-Plaintiff-Appellee,
v.
UNITED STATES CURRENCY IN the AMOUNT OF $181,590.00 (ONE
HUNDRED EIGHTY ONE THOUSAND, FIVE HUNDRED AND
NINETY DOLLARS, More or Less,
Third-Party-Defendant.
and
Appeal of Manuel MERCADO, Claimant-Appellant.
Appeal of ZANE AND RUDOFSKY.
 No. 244, Docket 88-6137.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 19, 1988.
Decided May 4, 1989.
 
 Edward S. Rudofsky (Zane and Rudofsky and Karen M. Newman, New York City, of counsel), for plaintiff-appellant and claimant-appellant Manuel Mercado and appellant Zane and Rudofsky.
 Kiyo A. Matsumoto, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., and Robert L. Begleiter, Asst. U.S. Atty., E.D.N.Y., of counsel), for appellees.
 Before VAN GRAAFEILAND, CARDAMONE and PIERCE, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Manuel Mercado appeals from a summary judgment of the United States District Court for the Eastern District of New York (Platt, J.) granting forfeiture of $181,590 pursuant to 31 U.S.C. Sec. 5317. The judgment also dismissed Mercado's action seeking return of the funds and imposed a $1,000 Rule 11 sanction against Mercado's counsel. We reverse the district court's imposition of the sanction but affirm the district court's judgment in all other respects.
 
 
 2
 On March 1, 1985, as Mercado entered a boarding area at Kennedy Airport for a flight to Athens, Greece, he placed a carry-on bag on the x-ray screening device. As the bag went through the x-ray machine, the operator of the machine noticed that the bag contained what appeared to be a large amount of money. The operator notified her supervisor, Allen Samuels, who ascertained that Mercado was the bag's owner and secured his consent to open it. Upon verifying the presence of the cash, Samuels told Mercado that persons transporting currency had to comply with currency reporting requirements and directed his attention to a sign posted outside the boarding area that explained the requirements. Mercado indicated that he understood the reporting requirements.
 
 
 3
 Samuels informed his supervisor of the discovery of the cash, and the supervisor came to the checkpoint. When he arrived Mercado was gone. The supervisor then summoned Port Authority police. Mercado reappeared after the police had responded to the call.
 
 
 4
 After questioning Mercado, the police took the bag and money to the police station, and Mercado voluntarily accompanied them. The police ascertained at the station that the bag contained $147,690. Mercado's answers to inquiries about the money at both the airport and the police station were inconsistent and uninformative. In response to one question, he stated that he didn't know whether there was any money in the bag. Responding to another, he said that he thought there was between $12,000 and $20,000. In another answer, he said that he believed there was between $20,000 and $30,000. He made, and now makes, no contention that he knew the bag contained $147,690.
 
 
 5
 He told the officers that the money belonged to a lawyer named Martin Rutberg, but, when Rutberg denied that he even knew Mercado, Mercado dropped this claim. Thereafter, he refused on Fifth Amendment grounds to answer any questions concerning the ownership of the money or the identity of anyone who could be said to have caused the money to be transported abroad. His announced position in this litigation is that "the identity of the 'bailor' or 'rightful owner' is ... irrelevant."
 
 
 6
 During Mercado's questioning at the police station, he stated that he had checked a suitcase for the Athens flight before he attempted to board the plane, but he added that the suitcase contained no money. The police nonetheless made arrangements for the return of the suitcase from Athens to Kennedy Airport. When it was discovered there that the suitcase contained $33,900, this amount also was seized by customs agents.
 
 
 7
 In October 1985, Mercado filed suit in the district court asking that the Government be directed to release the currency. Six months of unsuccessful negotiations followed. In April 1986, the Government answered Mercado's complaint and also filed a third-party complaint in rem seeking forfeiture of the currency. The Government served copies of the complaint on both Mercado and Rutberg. Rutberg disclaimed any ownership in the currency, but Mercado's attorney filed an answer to the third-party complaint, attached to which was a claim for the currency verified by the attorney.
 
 
 8
 On January 14, 1988, Mercado moved for summary judgment on his request for a mandamus order. He claimed that the delay in processing the forfeiture violated his right to due process and that the April 1986 warrant for the arrest of the seized property was issued without a preseizure determination of probable cause. The district court then had the parties brief the question whether Mercado had standing even to contest the forfeiture. Thereafter, the district court denied Mercado's motion for summary judgment and dismissed his complaint. The court also imposed a $1,000 sanction against Mercado's counsel, concluding that his motion for summary judgment "was not well grounded in law and fact as required by Federal Rule of Civil Procedure 11." Finally, the district court ruled in favor of the Government in the third-party forfeiture action.
 
 DISCUSSION
 
 9
 Before a claimant can contest a forfeiture, he must demonstrate standing. United States v. $38,000.00 in United States Currency, 816 F.2d 1538, 1543-44 & n. 12 (11th Cir.1987). The burden was on Mercado to prove that he had standing, and he could not avoid meeting this burden by claiming a Fifth Amendment privilege. Baker v. United States, 722 F.2d 517, 518-19 (9th Cir.1983). Mercado's claim, verified "to the best of [his attorney's] knowledge, information and belief", stated only that on March 1, 1985 Mercado was in possession of the $147,690 and the baggage check for the suitcase containing $33,900 and that the money was not subject to seizure and forfeiture. Mercado contends that he need do no more than thus allege possession of the currency to demonstrate the requisite standing, and he relies on several cases which, he says, so hold. See, e.g., United States v. 1982 Sanger 24' Spectra Boat, 738 F.2d 1043, 1046 (9th Cir.1984). However, unless we know the facts giving rise to the findings of "possession" in the decisions upon which Mercado relies, those decisions have little precedential value in the instant case. See United States v. One 18th Century Colombian Monstrance, 802 F.2d 837, 838 (5th Cir.1986). "[T]here is no word more ambiguous in its meaning than Possession." National Safe Deposit Co. v. Stead, 232 U.S. 58, 67, 34 S.Ct. 209, 211, 58 L.Ed. 504 (1914). As former Judge Frank of this Court wrote, "The word 'possession' drips with ambiguity." City of New York v. Hall, 139 F.2d 935, 936 (2d Cir.1944). The conclusory and factually unsupported statement of Mercado's attorney that Mercado was "in possession" of the money does not suffice to give Mercado standing.
 
 
 10
 "Possession, as generally construed, means more than mere custody." United States v. One OX-5 American Eagle Airplane, 38 F.2d 106, 108 (W.D.Wash.1930); Rivers v. State, 46 Ga.App. 778, 780, 169 S.E. 260, 261 (1933). "Possession" denotes custody plus a right or interest of proprietorship, i.e., a domination or supremacy of authority over the property in question. Craig v. Gudim, 488 P.2d 316, 319 (Wyo.1971); Monroe County Motor Co. v. Tennessee Odin Ins. Co., 33 Tenn.App. 223, 231 S.W.2d 386, 395 (1950) (quoting Gibson v. St. Paul F. & M. Ins. Co., 117 W.Va. 156, 159, 184 S.E. 562, 563 (1936)); Hancock v. Finch, 126 Conn. 121, 123, 9 A.2d 811, 812 (1939) (also quoting Gibson v. St. Paul F. & M. Ins. Co., supra ). "Possession" requires a knowledge of presence and an intent to control. United States v. Wells, 721 F.2d 1160, 1162 (8th Cir.1983); United States v. Nitti, 444 F.2d 1056, 1060 (7th Cir.1971). If "possession" is defined in these terms, we agree with those courts which hold that possession is sufficient to establish standing.
 
 
 11
 However, a naked claim of possession, as in the instant case, is not enough. There must be some indication that the claimant is in fact a possessor, not a simple, perhaps unknowing custodian, some indicia of reliability or substance to reduce the likelihood of a false or frivolous claim. Thus, in United States v. $38,000.00 in United States Currency, supra, 816 F.2d 1538, one of the cases upon which appellant relies, the claimant asserted that he was holding the property as bailee for his brother. Id. at 1544. In United States v. $122,043.00 in United States Currency, 792 F.2d 1470 (9th Cir.1986), another of appellant's cited cases, the claimant contended that she was carrying the money for her husband. Id. at 1473.
 
 
 12
 Mercado, on the other hand, asserted that he did not know there was $147,690 in his carry-on case and $33,900 in his suitcase. He rejected all attempts by the Government to find out how the money got in the bag and suitcase. His claim of a bailment was refuted and dropped. He refused to accept a receipt for the funds that were seized and told the police that he didn't care what they did with the money. This was not "possession" in the well established meaning of the word. The district court correctly held that it was not such possession as gave Mercado standing.
 
 
 13
 Assuming for the argument that Mercado had standing to contest the forfeiture of the $181,590, the district court did not err in holding that Mercado had not satisfied the procedural requirements for claiming the funds. The parties are in accord that Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, 28 U.S.C.A. (Rules 77 to End) (1988 supp. at 38) sets forth the procedure for the making of a claim in an in rem forfeiture proceeding. The Rule provides that the claim "shall be verified on oath or solemn affirmation and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action." As stated above, the affidavit of Mercado's attorney was on information and belief and stated only that Mercado was in possession of the money and that it was not subject to seizure or forfeiture. The district court correctly held that this affidavit did not satisfy the requirements of Rule C(6).
 
 
 14
 Because there is a substantial danger of false claims in forfeiture proceedings, United States v. United States Currency in the Amount of $2,857.00, 754 F.2d 208, 213 (7th Cir.1985), more was required than the conclusory, hearsay, on-information-and-belief statement of Mercado's lawyer. Baker v. United States, supra, 722 F.2d at 519; United States v. Fifteen Thousand Five Hundred Dollars ($15,500.00) United States Currency, 558 F.2d 1359, 1360 (9th Cir.1977); United States v. United States Currency Amounting to the Sum of Thirty Thousand Eight Hundred Dollars ($30,800.00), 555 F.Supp. 280, 283-84 (E.D.N.Y.), aff'd, 742 F.2d 1444 (2d Cir.1983). Affidavits such as this by an attorney would be given no weight in summary judgment proceedings. See, e.g., Wyler v. United States, 725 F.2d 156, 160 (2d Cir.1983). Claims in in rem forfeiture proceedings usually involve substantial sums of money and lend themselves readily to the filing of false claims. Where, as here, the claimant is available to verify his own claim, he should not be permitted to rely upon a hearsay and conclusory verification by his lawyer.
 
 
 15
 Assuming, again for the argument, that Mercado satisfied both the above discussed standing and procedural requirements, his claim for restitution nonetheless must fail on the merits. Mercado does not contend that he was unaware of the reporting requirements. Likewise, he does not seriously dispute the Government's contention that he intended to board the plane for Athens. In our view, Mercado was sufficiently close, both temporally and spatially, to actual boarding that he was required to file a section 5316 report. See United States v. Gomez-Londono, 553 F.2d 805, 810 (2d Cir.1977); United States v. Rojas, 671 F.2d 159, 163 (5th Cir.1982); United States v. Cutaia, 511 F.Supp. 619 (E.D.N.Y.1981). The x-ray picture gave customs authorities all the evidence needed to request a search of Mercado's bag, and Mercado himself furnished the necessary information to justify the recall and search of his suitcase. See United States v. Benevento, 836 F.2d 60, 67-70 (2d Cir.1987),cert. denied, --- U.S. ----, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); United States v. Duncan, 693 F.2d 971, 976-78 (9th Cir.1982), cert. denied, 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).
 
 
 16
 Although Mercado does complain about alleged illegal and unconstitutional delays, we find no merit in his contentions. Mercado does not challenge the period between October 15, 1985, when he instituted his suit, and April 30, 1986, when the Government's answer and third-party forfeiture complaint were filed. The parties were engaged in negotiations during that period with the express understanding that no complaint of delay would be made. Mercado argues, however, that the period between the seizure on March 1, 1985 and the institution of his suit on October 15, 1985 was too long. After applying the four-part test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), as the Supreme Court directed us to do in United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555, 564-65, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983), we disagree. The Government informed Mercado on March 21, 1985 that the currency taken was subject to forfeiture but that he could petition for relief from forfeiture pursuant to 19 C.F.R. Sec. 171. Mercado never filed a petition for relief, but, instead, simply wrote a letter demanding the return of the currency. Cf. United States v. $23,407.69 in United States Currency, 715 F.2d 162, 165-66 (5th Cir.1983). Because Mercado presented the appearance of a typical narcotics courier, the Government needed time to investigate and decide whether it should proceed under 21 U.S.C. Sec. 881 or 31 U.S.C. Sec. 5316. The possibility of a grand jury investigation and indictment also had to be explored. The delay was not unreasonable, and Mercado has shown no prejudice.
 
 
 17
 Mercado also complains of the period between December 17, 1986, when the parties advised the district court that discovery was completed and the case was ready for trial, and January 14, 1988, when Mercado moved for summary judgment. However, we do not believe that a thirteen-month delay in a civil case being reached for trial in the Eastern District of New York constitutes a denial of due process. Unlike the situation in United States v. Banco Cafetero Panama, 797 F.2d 1154, 1162-63 (2d Cir.1986), the thirteen-month delay was not requested by the Government, which was ready at all times to go to trial.
 
 
 18
 As Mercado recognizes in his brief on appeal, the question whether a clerk may issue a warrant of arrest without a pre-issuance determination of probable cause already has been answered in the affirmative by this Court. See United States v. Banco, supra, 797 F.2d at 1162-63.
 
 
 19
 We are cognizant of the extremely heavy burden imposed on our district court judges by their lengthy court calendars and sympathize with their efforts to discourage the bringing of frivolous actions. However, Rule 11 sanctions should be applied only where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir.1985). Despite our dismissal of Mercado's claims, we do not believe that the above-quoted test accurately describes his counsel's conduct in the instant case. Accordingly, we reverse the imposition of sanctions against him. In so doing, we do not condone counsel's criticism of the district judge.
 
 
 20
 We reverse that part of the judgment which imposes a sanction on appellant's counsel. In all other respects the judgment is affirmed. No costs to any party.