UNITED STATES of America,
Plaintiff,

v.

$746,198 in U.S. Currency, more
or less, Defendant.

No. 1:02–CV–90026.

United States District Court,
S.D. Iowa,
Western Division.

Jan. 20, 2004.

Craig Peyton Gaumer, Assistant United States Attorney, Des Moines, IA, for Plaintiff.

Christopher A. Kragnes, Des Moines, IA, Ben M. Gonek, Pleasant Ridge, MI, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

PRATT, District Judge.

Before the Court is Plaintiff, United States of America's, Motion for Summary Judgment against Claimant Lawrence Edward Armstrong ("Armstrong"). Armstrong filed a resistance to the motion and Plaintiff filed a reply brief. Both parties request a hearing on the matter. The Court does not believe, based on the facts of this case, that a hearing is warranted. Accordingly, the matter is fully submitted.

### I. FACTS

The facts of this case are generally undisputed for purposes of the present motion. On January 16, 2002, Iowa State Patrol Trooper Todd Bentley performed a traffic stop on a blue Chrysler Sebring that was traveling approximately 73 miles per hour in a 55 mile per hour speed zone. Armstrong was driving the vehicle and was accompanied by a female, later identified as Diana Smith ("Smith"). Trooper

Bentley asked Armstrong for his license and registration and Armstrong complied. The vehicle was registered in the name of Thrifty Rental Car and Smith was listed as an authorized driver. Trooper Bentley eventually requested permission to search the vehicle and was granted consent by Smith.[1] A canine unit eventually was called to the scene and alerted to the trunk of the vehicle. Trooper Bentley opened the trunk and found two locked suitcases. Both Armstrong and Smith claimed that the keys were in a black bag in the rental car. No key was located, but Trooper Bentley, who had been joined by Officer Lutter, opened the suitcases with a knife. Inside each suitcase were large amounts of cash, wrapped in vacuum sealed plastic. It was eventually determined that the suitcases contained four bundles of cash, totaling $746,198 in United States currency.

On July 2, 2002, the Plaintiff filed a Verified Complaint in this matter, alleging that the currency was seized from Lawrence Armstrong on January 16, 2002 and was subject to forfeiture under various theories. On August 21, 2002, Armstrong filed a Verified Claim in which he claimed to own the currency and to "have a full ownership interest" in it. Armstrong later filed a document asserting that he was "an innocent owner of the [Defendant] currency."

According to Armstrong, the defendant property was "given to Lawrence Armstrong by [his] father when he was dying in March of 2001." Armstrong claims that his father worked in a block factory and discovered the property in an old building he was working on in Detroit. Armstrong's father took the money, placed it in large plastic trash bags, and eventually gave it to Armstrong, for his personal use, with advice not to tell anyone about it.

---

1. Armstrong denies that either he or Smith gave consent to search the vehicle.

Armstrong's father did not disclose the discovery of the money to the owners of the building or to the contractors for whom he was working. Neither Armstrong nor his father ever told the police about the money and made no effort to find the rightful owners of the money. Armstrong eventually hid the money under the basement steps of his home and was taking the money from Detroit to Las Vegas when the money was seized by Trooper Bentley.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment has a special place in civil litigation. The device "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). In operation, the role of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required. *See id.; see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990).

"[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda General Hospital*, 523 F.2d 891, 893 n. 5 (8th Cir. 1975)). The purpose of the rule is not "to cut litigants off from their right of trial by jury if they really have issues to try," *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natu-*

*ral Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried," *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir. 1976) (citing *Lyons v. Board of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis added). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material .... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. ANALYSIS

The issue presented to the Court in the present Motion for Summary Judgment is a narrow one: Does Armstrong possess standing to contest the forfeiture of the seized United States currency? The Government cites three alternative theories upon which it claims Armstrong lacks standing to contest the forfeiture. First, the Government argues that, under applicable Michigan law, Armstrong cannot be a legitimate owner of the defendant property because the money was stolen by his father. Second, the Government claims that Armstrong lacks standing because

neither he nor his father complied with the Michigan statutory scheme that allows finders of lost property to keep that which they have found if the owners cannot be located. Finally, the Government claims that Armstrong lacks standing under Article III of the United States Constitution insofar as he has no ownership interest in the defendant property.

■■■ Article III standing is a threshold question in every federal court case. *United States v. One Lincoln Navigator 1998,* 328 F.3d 1011, 1013 (8th Cir.2003). "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). "[T]he question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue." *United States v.1998 BMW "I" Convertible,* 235 F.3d 397, 399 (8th Cir.2000) (quoting *Flast v. Cohen,* 392 U.S. 83, 99–100, 88 S.Ct. 1942, 20 L.Ed.2d 947(1968)); *see also Sierra Club v. Morton,* 405 U.S. 727, 731, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (a litigant must possess "a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy").

■■■ Article III requires a showing of actual or threatened injury, causation by the challenged action, and redressability by the adjudication of the claim. *See Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Article III standing in a forfeiture case "turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy." *One Lincoln Navigator 1998,* 328 F.3d at 1013; *see also 1998 BMW,* 235 F.3d at 399 ("At the outset, a

claimant must be able to show a facially colorable interest in the proceedings ... otherwise, no constitutional case or controversy exists capable of federal court adjudication."). Upon a proper and sufficient showing of legal interest, an individual can contest the forfeiture of defendant property. *See United States v. One Parcel of Property Located at Tracts 10 & 11 of Lakeview Heights, Canyon Lake, Comal County, Tex.,* 51 F.3d 117, 119 n. 5 (8th Cir.1995).

The burden, though not rigorous, is on the claimant of defendant property to establish standing. *See generally One Lincoln Navigator 1998,* 328 F.3d at 1013; *Mercado v. U.S. Customs Serv.,* 873 F.2d 641, 644 (2d Cir.1989). An individual claiming standing need not prove the underlying merits of the claim. *See United States v. Premises Known as 7725 Unity Ave. N., Brooklyn Park, Minnesota,* 294 F.3d 954, 957 (8th Cir.2002) (citing *United States v. $515,060.42 in United States Currency,* 152 F.3d 491, 497–98 (6th Cir.1998)). Rather, "the claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property." *Id.* (citation omitted). The Eighth Circuit Court of Appeals has stated, "To contest a forfeiture, one must have an ownership interest in the res." *United States v. One 1945 Douglas C–54 (DC–4) Aircraft, Serial No. 22186,* 647 F.2d 864, 866 (8th Cir.1981) (citing *United States v. Fifteen Thousand Five Hundred Dollars ($15,500.00) United States Currency,* 558 F.2d 1359, 1361 (9th Cir.1977); *General Finance Corp. v. United States,* 333 F.2d 681, 682 (5th Cir.1964); *United States v. Eleven Thousand Five Hundred and Eighty Dollars ($11,580) In United States Currency,* 454 F.Supp. 376, 381 (M.D.Fla. 1978)); *see also 1998 BMW,* 235 F.3d at 399 ("To manifest standing in the forfeiture context, a claimant must first show an ownership interest in the property."). Such a colorable ownership interest "may be evidenced in a number of ways including showings of actual possession, control, title and financial stake." *One Lincoln Navigator 1998,* 328 F.3d at 1013 (quoting *United States v. One 1945 Douglas C–54 (DC–4) Aircraft,* 647 F.2d 864, 866 (8th Cir.1981)); *see also 7725 Unity Ave.,* 294 F.3d at 956; *1998 BMW,* 235 F.3d at 399.

The determination of what constitutes a sufficient interest in the res to confer standing is a difficult one. Clearly, mere possession of the res is insufficient. *See e.g., Mercado v. United States Customs Service,* 873 F.2d 641, 645 (2d Cir.1989) (a "naked claim of possession" is insufficient to confer standing). Additionally, "[t]he possession of bare legal title to the res may be insufficient to establish ownership." *One 1945 Douglas,* 604 F.2d at 28–29. The Eighth Circuit has indicated that an "ownership interest" is required to establish Article III standing, and indeed, has never granted standing on the basis of mere possession. Nonetheless, the Eight Circuit has never squarely concluded that certain possessory interests are insufficient. *See e.g., One 1945 Douglas* 647 F.2d at 866; *1998 BMW,* 235 F.3d at 399.

Other jurisdictions that have addressed the issue have found that something less than ownership, but greater than naked possession can be sufficient to confer Article III standing. Generally, "possession of the defendant property, without more, is insufficient to confer standing if there are serious reasons to doubt the claimant's right to the property ...." *United States v. $38,570 U.S. Currency,* 950 F.2d 1108, 1113 (5th Cir.1992). Possession, particularly the level of possession required to confer standing in the context of a civil forfeiture, means more than mere custody. *See Mercado,* 873 F.2d at 644. Possession "denotes custody

plus a right or interest of proprietorship, *i.e.*, a domination or supremacy of authority over the property in question." *Id.* at 644–45 (citations omitted).

Case law in other judicial districts supports the proposition that a person claiming a possessory interest in property may have standing if the possessory interest is explained. The claimant needs to provide some explanation of the interest for it to qualify as a colorable possessory interest sufficient to establish standing. This proposition was discussed extensively in *United States v. $244,320.00 in United States Currency,* 2003 WL 22945740, *8 (S.D.Iowa 2003):

> "When confronted with mere physical possession of property as a basis for standing, [courts] require some explanation or contextual information regarding the claimant's relationship to the seized property." *$515,060.42,* 152 F.3d at 498; *see also $38,750.00,* 950 F.2d at 1113 ("Ordinarily, . . . a claimant is required to submit some additional evidence of ownership along with his claim in order to establish standing to contest the forfeiture."); *$321,470.00,* 874 F.2d at 301, 304 (finding a courier carrying cash from an unknown owner to an unknown recipient (raising inference of a mule of drug traffickers) must be prepared to demonstrate a lawful possessory interest). Thus, "an individual with a possessory interest in the property will have standing if that interest is explained." *$57,790.00,* 263 F.Supp.2d at 1241 (emphasis added). "[W]here a claimant asserts a possessory interest and provides some explanation of it (e.g., that he is holding the item for a friend), he will have standing." *$191,910.00,* 16 F.3d at 1058 (emphasis added).
>
> "A claimant need not explain this interest in detail, however, so long as he does something more than conclusorily state that he has some undefined 'interest.'" *$191,910.00,* 16 F.3d at 1057; *see also United States v. Eighty Three Thousand, One Hundred and Thirty–Two Dollars ($83,132.00) in U.S. Currency,* 1996 WL 599725, *2 (E.D.N.Y.) ("the simple assertion of an interest in or ownership of forfeited property, if unsupported by additional evidence and by a valid legal theory, is insufficient to establish standing.") (citing *United States v. New Silver Palace Restaurant, Inc.,* 810 F.Supp. 440 (E.D.N.Y.1992)). The explanation should, however, include "factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *$515,060.42,* 152 F.3d at 498. "There must be some indication that the claimant is in fact a possessor, not a simple, perhaps unknowing custodian, some indicia of reliability or substance to reduce the likelihood of a false or frivolous claim." *Mercado,* 873 F.2d at 645. In addition, while "possession is evidence of standing, the ultimate focus of any standing inquiry is injury." *United States v. Portrait of Wally, A Painting by Egon Schiele,* 2002 WL 553532, *6 (S.D.N.Y.) (citing *Cambio Exacto,* 166 F.3d at 527).

*Id.* at *8–9.

Armstrong's claim in the present matter rests primarily on his possession of the defendant currency. Armstrong argues: "The claimant admitted to ownership of the currency and explained that his father found the money in an abandoned building and gave the money to the claimant just prior to his death." Armstrong continues by stating that he accepted a receipt for the currency upon its seizure and filed a Verified Complaint for return of the funds. Additionally, Armstrong points out that

the only other occupant of the vehicle disclaimed any interest in the defendant property. These factors, according to Armstrong, "indicate both an ownership and a possessory interest in the currency . . . ." Thus, Armstrong asserts that he has provided a sufficient explanation, or "story behind the property," to confer standing upon him. The Court disagrees.

■ While the case law of other jurisdictions clearly indicates that a possessory interest, if explained, may confer standing, the Court cannot accept Armstrong's assertion that any explanation tendered is sufficient. Rather, the Court believes that the explanation must evidence some legitimate and legal claim to the property. Armstrong's interest in the defendant property is defined by Michigan law. *See One Lincoln Navigator*, 328 F.3d at 1013 ("Ownership interests are defined by the law of the State in which the interest arose . . . .").

■ The Government claims that Defendant can have no valid interest in the defendant property, first, because the property is stolen and a thief can have no interest in stolen property. Under Michigan law, a defendant is guilty of receiving and concealing stolen property if: (1) the property is stolen; (2) the value of the property meets the statutory requirement; (3) the defendant received, possessed, or concealed the property with knowledge that it was stolen; (4) the property is identified as being stolen; and (5) the defendant had guilty actual or constructive knowledge that the property concealed or received was stolen. *See People v. Pratt*, 254 Mich.App. 425, 656 N.W.2d 866, 868 (2002). A person steals property under Michigan law when he "takes[s] (the property of another or others) without permission or right, esp. secretly or by force," or appropriates it "without right or acknowledgment." *Id.* at 869.

The Government argues that Armstrong's father took the defendant property from a construction site where he was working, made no effort to find its rightful owner, and deliberately kept his taking of the property secret. Further, the Government argues that Armstrong knew these facts when he accepted the defendant property from his father. Armstrong's deposition testimony on the issue is as follows:

Q. Where did your father get that money?

A. He says he found it in a building he was working in.

Q. What building?

A. It was in Mt. Elliott, he was working in a old building.

. . . . .

Q. So he found 700–some thousand dollars?

A. I don't know how much it was.

Q. But he found that in an old abandoned building?

A. Right.

Dep. Test. of Armstrong at 90–92.

■ On the basis of Armstrong's testimony, the Court believes that there is insufficient evidence in the current record to conclude that the defendant property was stolen within the meaning of Michigan law. "Under Michigan law, the finder of abandoned property has a superior claim to said property than does the owner of the *locus in quo*." *Romanski v. Detroit Entertainment, L.L.C.*, 265 F.Supp.2d 835, 845 (E.D. Mich.2003) (citing *People v. Twenty–Seven Thousand Four Hundred Ninety Dollars*, 1996 WL 33348190, *1 (Mich.Ct.App.Nov.26, 1996) (citing and discussing Mich. Comp. Laws § 434.21 et. seq.)). Because the Court is without any information as to whether the property where the money was allegedly found was

"abandoned,"[2] the Court believes a genuine issue of material fact exists as to whether Armstrong's father "stole" the money. *See id.* (defendant not chargeable with theft where property was abandoned).

Despite the Court's inability to conclude whether the defendant property was stolen, it is clear that lost or abandoned property in Michigan is subject to the Lost and Unclaimed Property Act in Michigan Code Chapter 434. The Lost and Unclaimed Property Act provides a statutory process whereby a finder of property may acquire ownership in the property. Mich.Code § 434.21 *et seq.* Fundamentally, after filing an appropriate claim, if the true owner of the property does not come forth within six months, ownership of the property may become vested in the finder. *Id.* There is no dispute in the record that neither Armstrong nor his father complied with the statutory scheme of the Lost and Unclaimed Property Act. The Lost and Unclaimed Property Act does not, however, indicate what, if any, interest an individual who fails to comply with the Act has in found property. The Court, therefore, turns to Michigan common law to determine the issue:

> Public policy in favor of honesty by finders supports vesting clear title in them at some point. To do otherwise would cause practical problems of continuous bailment. As an early Michigan case noted, the finder of lost goods under the common law obtained *only first possessory rights* better than all but the true owner. If a true owner were to present himself at a later date, even years after goods were found, the holder of the goods would have to give a good account. The holder (finder) was placed in

the position of a permanent bailee for the true owner. *Wood v. Pierson,* 45 Mich. 313, 7 N.W. 888 (1881).

> The Lost Goods Act provides protection to the finder, a reasonable method of uniting goods with their true owner, and a plan which benefits the people of the state through their local governments.

*Willsmore v. Oceola Tp.,* 308 N.W.2d at 803–04 (Mich.Ct.App.1981) (superseded by statute on other grounds) (emphasis added). The common law designation of a finder of lost property is still applicable in Michigan absent statutory authority to the contrary. Accordingly, the Court finds that, at most, Defendant's version of events grants him status as a "permanent bailee" of the defendant property.

There is authority for the proposition that a bailee of property possesses Article III standing to contest a civil forfeiture. In *United States v. $38,000 in U.S. Currency,* 816 F.2d 1538 (11th Cir.1987), the Eleventh Circuit found that a bailee of seized currency had a sufficient interest in the bailed currency to have Article III standing to contest the currency's forfeiture. *Id.* at 1544. Finding that a bailee has a possessory interest in bailed property sufficient to assert a claim against anyone, other than the bailor, who interferes with that interest, the *$38,000* Court held that the bailee had Article III standing to contest the forfeiture of the bailed currency. *Id.; see also $321,470.00,* 874 F.2d at 304 ("No one can question the standing of a bailee or agent to attack a forfeiture of property subject to a lawful or even colorably lawful bailment or agency."); *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1058 (9th Cir.1994) (although mere unexplained possession is insuffi-

---

**2.** The Court notes that it appears *likely* from the record that the property in question was not "abandoned" because Armstrong's father was working for a construction company at the time of his alleged discovery. Nonetheless, the Court does not have adequate information to make this determination.

cient, "where a claimant asserts a possessory interest and provides some explanation of it (e.g., that he is holding the item for a friend), he will have standing"); *cf. Mercado,* 873 F.2d at 645 (where claimant did not assert that he was a bailee, court deemed "a naked claim of possession" insufficient to establish standing); *$244,320.00,* 2003 WL 22945740, *8 ("[t]he Court notes that a bailee may potentially make a claim in a forfeiture action or otherwise assert the rights of the owner of the property subject to forfeiture."); *United States v. U.S. Currency in the Sum of Ninety Seven Thousand Two Hundred Fifty–Three Dollars, More or Less,* 1999 WL 458155, *6 (E.D.N.Y.) ("In the context of civil forfeiture actions, courts have widely held that the bailee of seized currency possess a sufficient stake in the currency to have Article III standing."). The case law of jurisdictions that accord Article III standing to bailees, however, also supports the proposition that if an individual asserts a possessory interest as a bailee, that designation must be pleaded by the claimant. *See e.g., $244,320.00,* 2003 WL 22945740, *10 and n. 7 (citing Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims). Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides, "[A] person who asserts an interest in or right against the property that is the subject of the [civil forfeiture] action must file a verified statement identifying the interest or right"

In this case, Armstrong filed a "Verified Claim" asserting that he is "the owner of and [has] a full ownership interest" in the defendant property. Armstrong did not assert in his claim that he held the property as a bailee for some unidentified bailor and thus, cannot claim standing on that basis pursuant to the provisions of Rule C(6). Rather, Armstrong claims that he holds an unrestrained *ownership* interest in the res. Based on the binding and persuasive case law discussed *supra,* the Court cannot conclude that Armstrong has met the burden of proving that he has anything more than a "naked possessory" interest in the defendant property. While it is clear that Armstrong possessed the property and exercised a certain degree of control over it, there is no indication that he possessed any legal title to the property whatsoever. Similarly, the Court cannot reasonably conclude that Armstrong has a financial stake in the Defendant property because, as a bailee, he maintains only the right to possess the money and not the right to use it or exercise true dominion over it. Armstrong's status as a bailee confers only a possessory interest in him and not an ownership interest as the Court believes is required for Article III standing under applicable Eighth Circuit jurisprudence. Accordingly, the Court concludes that Armstrong does not have standing pursuant to Article III to contest the forfeiture in this case.

█ Even assuming, *arguendo,* however, that Armstrong possesses standing to contest the forfeiture pursuant to Article III, the Court finds that he also lacks statutory authority to contest the forfeiture. Subsequent to his claim that he possesses a full ownership interest in the defendant property, Armstrong's pleadings indicate he is also claiming the property as an "innocent owner." Title 18, United States Code, Section 983(d)(1) provides, "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1). The plain language of the civil forfeiture statute provides that a claimant must be an "owner" of the res sought to be forfeited by the Government. Armstrong argues that the "innocent owner" defense is not a

requirement for Article III standing, but rather, forms an element of the innocent owner's claim on the merits. The Court agrees to the extent that Armstrong need not prove that he is in fact an innocent owner of the property at this juncture. Nonetheless, the innocent owner's defense provides a requisite level of standing necessary to contest a civil forfeiture instituted under Section 983.

Section 983(d)(6) provides, for purposes of the "innocent owner" statute, the definition of the term "owner:"

> In this subsection,the term "owner"-
>
> (A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and
>
> (B) does not include-
>
> > (I) a person with only a general unsecured interest in, or claim against, the property or estate of another;
> >
> > (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized;
> >
> > (iii) a nominee who exercises no dominion or control over the property.

*Id.* § 983(d)(6). Thus, pursuant to the civil forfeiture statute, Armstrong's claim, on the facts now before the Court, necessarily fails because he cannot establish that he is an *owner* within the meaning of Section 983. Indeed, because the greatest interest Armstrong can claim in the defendant property on the facts of this case is that of a bailee, he is specifically precluded by statute from qualifying as an owner because the bailor of the res remains unidentified and Armstrong has not shown any other colorable legitimate interest in the seized property.

## IV. CONCLUSION

For the reasons stated herein, the Court concludes that Claimant Lawrence Armstrong lacks both Article III and statutory standing to contest the civil forfeiture of the defendant property. Accordingly, Plaintiff's Motion for Summary Judgment as to Claimant Armstrong is GRANTED.

IT IS SO ORDERED.