UNITED STATES of America,
Plaintiff–Appellee,

v.

CAMBIO EXACTO, S.A., Pan American Money Transfer, Inc., and Perusa, Inc., Claimants–Appellants,

All Funds on Deposit and to be Deposited, Through and Including June 25, 1996, in Account Number 590018256 at Chemical Bank in the Name of Perusa, Inc., up to and Including the Amount of $1,282,322, and All Proceeds Traceable Thereto, Account Number 904–538990 at Chemical Bank in the Name of Olympic Remittance Corp., up to and Including the Amount of $67,070 and All Proceeds Traceable Thereto, Account Number 0191001247 at Ponce De Leon Federal Savings Bank in the Name of Pan American Express, Inc., up to and Including the Amount of $977,711, and All Proceeds Traceable Thereto, Account Number 2101668082 at National Westminster Bank in the Name of Corporacion Financiera De La Nueva Generacion, Inc. ("Corfinge"), and All Proceeds Traceable Thereto, All Funds on Deposit in Account Number 69643928 at Citibank in the Name of Pan American Express in the Amount of $82,000.00, and All Proceeds Traceable Thereto, Defendants.

Docket Nos. 97–6306, 97–6308 and 97–6312.

United States Court of Appeals,
Second Circuit.

Argued Oct. 5, 1998.
Decided Feb. 2, 1999.

Zachary W. Carter, United States Attorney for the Eastern District of New York (Varuni Nelson, Arthur P. Hui, Jennifer C. Boal, Elliot M. Schachner, Assistant United States Attorneys, Of Counsel), for Plaintiff–Appellee.

Steven Cohn, Carle Place, New York, for Claimant–Appellant, Cambio Exacto, S.A.

Pierre F.V. Merle, Stairs Dillenbeck Finley & Merle, New York, New York, for Claimant–Appellant Pan American Money Transfer, Inc .

T. James Bryan, Bryan, Levitin & Bab, LLP, New York, New York, for Claimant–Appellant Perusa, Inc.

Before: CARDAMONE, PARKER, AND SACK, Circuit Judges.

SACK, Circuit Judge :

Claimants, Pan American Express, Inc.,[1] Perusa, Inc. and Cambio Exacto, S.A., appeal from three decisions of the United States District Court for the Eastern District of New York (Mishler, *J.*) in a civil forfeiture action in which the United States obtained final decrees of forfeiture of funds held in their accounts. Claimants appeal: (1) an order denying motions by Pan American and Perusa to dismiss the government's complaint and vacate the warrants of arrest *in rem,* and denying Perusa's motion for summary judgment; (2) an order dismissing the claims of Pan American and Perusa for lack of standing and denying Cambio Exacto, S.A. leave to file a claim; and (3) an order denying Pan American leave to file an amended claim as a bailee. We conclude that Perusa and Pan American have standing to contest the forfeitures. We therefore reverse the district court's order dismissing Perusa's and Pan American's claims and vacate the decrees of forfeiture of the funds held in their accounts. We affirm the order of the district court denying Cambio Exacto leave to file a

claim. We dismiss the appeal with respect to the order denying the motions by Perusa and Pan American to dismiss the complaint and for summary judgment because it is not an appealable final judgment. We also dismiss as moot the appeal of the order denying Pan American leave to file an amended claim.

## BACKGROUND

In this civil forfeiture action the United States seized $1,282,322.00 from an account at Chemical Bank in the name of Perusa, Inc., $778,709.40 from an account at Ponce de Leon Federal Savings Bank in the name of Pan American Express, Inc., and an additional $82,000.00 from a Pan American account at Citibank.

According to the government's complaint filed in June 1996, a confidential informant laundered drug money through Perusa's and Pan American's accounts during the period from June 1995 to January 1996. The complaint alleges that the defendant funds therefore constitute property involved in and proceeds traceable to transactions or attempted transactions in violation of 18 U.S.C. §§ 981, 984, 1956 and 1957 (money laundering), and proceeds traceable to violations of 21 U.S.C. § 841 *et seq.* (controlled substances) and 31 U.S.C. § 5324 (structuring), and are therefore subject to seizure and forfeiture under 18 U.S.C. §§ 981 and 984 and 21 U.S.C. § 881. Finding that the government had established probable cause for the seizures, the district court issued warrants for arrest of the funds on June 20 and June 27, 1996.

Perusa and Pan American are money transmitters, licensed in New York. A money transmitter, as the name rather strongly implies, is in the business of sending money: collecting it from customers and, for a commission, delivering it to a designated recipient, typically in another country. Money transmitters rely on independent agents at both ends of each transaction. Customers give local agents the money they want sent; the agents then notify the money transmitter of the transaction and deposit the funds to be transferred in the transmitter's bank account. Similarly, to physically turn over the

1. Pan American Express, Inc. has changed its name to Pan American Money Transfer, Inc.

funds to the recipient, money transmitters use entities doing business in the recipient's vicinity. When performing that function, they are known as correspondents. To expedite the delivery process, correspondents sometimes distribute funds to the recipients before the amount actually arrives from the money transmitter. Cambio Exacto was a correspondent in Colombia for Perusa.

Several provisions of New York banking law, designed to protect customers of money transmitters, are relevant to this appeal. First, the agents of money transmitters are required to deposit the money they receive from customers for transmission in a special bank account operated by the money transmitter. N.Y. BANKING LAW § 651–a (McKinney 1998). The defendant accounts are such accounts. Second, in exchange for their cash deposits, customers receive a receipt confirming the contractual obligation of the transmitter to deliver the funds to the intended recipient and setting forth the transmitter's liability if it fails to deliver the funds. N.Y. COMP.CODES R. & REGS. tit. 3, § 406.3(f) (1998). Finally, to ensure that it will meet its obligations to its customers, a money transmitter must post a bond of at least $500,000 with the New York Superintendent of Banking. N.Y. BANKING LAW § 643(1) (McKinney 1998). Perusa satisfied this requirement by posting certificates of deposit worth $500,000.

Shortly after the government seized the funds in their accounts, Perusa and Pan American gave notice of their claims to the funds. On July 3, 1996, Pan American filed a Notice of Claim in which it asserted a "possessory interest" in the funds seized from its account. On July 5, 1996, Perusa filed a Claim for Arrested Property.

Perusa and Pan American then moved to vacate the warrants of arrest and to dismiss the government's complaint for lack of probable cause pursuant to Fed.R.Civ.P. 12(b)(6) and Rule 12 of the Local Rules for Admiralty and Maritime Claims, which are applicable to such proceedings. Perusa also sought an order granting it summary judgment under Fed.R.Civ.P. 56. The district court treated Pan American's motion as one for summary judgment also. In making these motions,

Perusa and Pan American asserted that even if, as the government claimed, drug money had at one time been laundered through their accounts, it had long since been delivered to its intended recipients. Thus the funds the government had seized were deposits belonging to other, presumably legitimate, customers.

On July 26, 1996, the district court denied Perusa's and Pan American's motions, finding that the government had met its burden of showing probable cause for the seizure of the funds and that there were issues of material fact for adjudication. *United States v. All Funds in Name of Perusa, Inc.*, 935 F.Supp. 208, 213–15 (E.D.N.Y.1996). For the sole purpose of deciding these motions, the district court assumed that Perusa and Pan American had standing to contest the forfeitures. *Id.* at 212.

Perusa then moved for leave to appeal to this Court pursuant to 28 U.S.C. § 1292(b), which motion Pan American joined and which the district court granted on August 9, 1996. We denied both claimants leave to appeal. *See United States v. All Funds on Deposit and to be Deposited*, Docket Nos. 96–8007, 8008 (Oct. 1, 1996).

On April 15, 1997, the district court, *sua sponte*, directed Perusa and Pan American to brief the issue of their standing to contest the forfeitures.

On May 12, 1997, Cambio Exacto moved for leave to file a late notice of claim, alleging that it had an ownership interest of $830,000 in the funds seized from Perusa's account at Chemical Bank. Cambio Exacto asserted that it had followed Perusa's instructions and paid out this sum to recipients designated by Perusa's customers but that Perusa had failed to reimburse it for the payments it made. The money the government seized, Cambio Exacto argued, therefore belonged to it.

In a Memorandum and Order dated June 18, 1997, the district court dismissed Perusa's and Pan American's claims to the seized funds on the ground that, as money remitters, they lacked standing to challenge the forfeiture of funds deposited by their customers. And the district court found that Cambio Exacto, as a local correspondent, also did

not have standing. The court therefore denied Cambio Exacto's motion to file a late claim. Pan American then moved for leave to amend its claim to assert an interest in the seized funds as a bailee. This motion was also denied.

With no valid claimants to the seized funds, on September 29, 1997, the district court entered decrees of forfeiture of the funds in the Perusa account and the two Pan American accounts. By stipulation of the parties, the decrees are stayed pending this appeal.

## DISCUSSION

### I. Issues on Appeal

Appellants make two claims. First, each appellant asserts that the district court erred in finding that it lacked standing to challenge the forfeiture of the funds. Second, Pan American and Perusa argue that the district court should have dismissed the government's complaint, vacated the warrants of arrest, and granted summary judgment in their favor. In support of this second claim, Pan American argues that the funds seized from its account were not "identical property" under 18 U.S.C. § 984[2] and so not subject to forfeiture, and Perusa asserts that it "proved" that any laundered funds had already left its account. Both Perusa and Pan American also argue that § 984 is unconstitutional.

### II. Standing

■ "Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *In re Gucci*, 126 F.3d 380, 387–88 (2d Cir.1997) (quoting *Warth v.*

---

**2.** 18 U.S.C. § 984 provides, in relevant part:
(b)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution ... or other fungible property—
(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
(B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

*Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)), *cert. denied*, —— U.S. ——, 117 S:Ct. 1552, 137 L.Ed.2d 701 (1997). In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court. *See United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir.1998). The issues raised on the standing question here are legal and therefore require *de novo* review. *See United States v. Ribadeneira*, 105 F.3d 833, 834 (2d Cir.1997) (*per curiam*) (statutory standing); *Comer v. Cisneros*, 37 F.3d 775, 787 (2d Cir.1994) (Article III standing).

### A. Statutory Standing

■ To establish statutory standing, a claimant asserting rights in property that has been seized and that is the subject of a forfeiture action *in rem* must file a verified claim within ten days after process has been executed, unless the court grants an extension. *See* Supplemental Rules for Certain Admiralty and Maritime Claims, Rule C(6).[3] There is no dispute that Perusa and Pan American met this requirement and so have statutory standing. Cambio Exacto, however, did not file a timely claim and therefore lacks statutory standing.

### B. Article III Standing

■ Because Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies," a litigant must also demonstrate constitutional standing: a "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Si-*

---

(2) ... [A]ny identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

**3.** The Supplemental Rules for Certain Admiralty and Maritime Claims also govern civil forfeiture claims. *See* 18 U.S.C. § 981(b)(2); 21 U.S.C. § 881(b).

*erra Club v. Morton,* 405 U.S. 727, 731, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). By limiting the matters that the federal judiciary will review, standing is "built on a single basic idea—the idea of separation of powers." *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). It would violate principles of separation of powers for us to hear a matter that was not a case or controversy and therefore not delegated to the judiciary under Article III.

The district court found, and the government argues on appeal, that Cambio Exacto, Perusa, and Pan American all lack Article III standing because they do not have a sufficient *ownership* interest in the funds seized. We disagree. While ownership or possession of property may provide evidence of standing, and in some circumstances act as, in effect, a surrogate for an inquiry into whether there is injury direct enough and sufficient enough to sustain standing, it is *injury* that is at the heart of the standing question.

■ This Court has had occasion to describe Article III standing in the context of forfeiture actions such as the one at bar:

> When a case has been dismissed for lack of standing, the appellate court's fundamental inquiry is whether "the appellants [have] alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

*Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1157 (2d Cir.1994). To demonstrate standing under Article III, therefore, a litigant must allege a "distinct and palpable injury to himself," *id.* (quoting *Warth,* 422 U.S. at 501, 95 S.Ct. 2197), that is the direct result of the "putatively illegal conduct of the [adverse party]," *id.* (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)), and "likely to be redressed by the requested relief," *id.* (citing *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 44–45, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

We have recognized that an owner of property seized in a forfeiture action will normally have standing to challenge the forfeiture. *See id.* at 1158 ("[A]n allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture."). We have also recognized that the possession of property may likewise confer standing to challenge its forfeiture. *See United States v. Amiel,* 995 F.2d 367, 371 (2d Cir.1993); *Mercado v. United States Customs Serv.,* 873 F.2d 641, 645 (2d Cir.1989). In determining standing to challenge a forfeiture, we look to ownership and possession because they are often reliable indicators of injury that occurs when property is seized. As the Third and Sixth Circuits have observed, ownership and possession usually satisfy Article III's standing requirement because "an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *United States v. $515,060.42 in U.S. Currency,* 152 F.3d 491, 497 (6th Cir.1998); *see United States v. Contents of Accounts Nos. 3034504504 and 144–07143,* 971 F.2d 974, 985 (3d Cir.1992), *cert. denied,* 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993).

At the same time, we have been careful to acknowledge that while ownership and possession generally may provide evidence of standing, it is the injury to the party seeking standing that remains the ultimate focus. It is because of the lack of proven injury that we have, for example, denied standing to "straw" owners who do indeed "own" the property, but hold title to it for somebody else. Such owners do not themselves suffer an injury when the property is taken. *See United States v. 500 Delaware Street,* 113 F.3d 310, 312 (2d Cir.1997).

Acknowledging that "[t]he word 'possession' drips with ambiguity," *Mercado,* 873 F.2d at 644 (quoting *City of New York v. Hall,* 139 F.2d 935, 936 (2d Cir.1944)), we have similarly held that where a mere custodian has possession, it is only a "naked claim of possession" and does not thereby impart Article III standing. He or she has not demonstrated injury sufficient to satisfy the Article III standing test. *See id.* at 645.

An airline passenger, for example, who does not know that a bag seized from him contains money does not have standing to challenge a forfeiture of the funds because he has suffered no injury. *See id.* The owner of a safety deposit box who does not also own its contents is not necessarily injured and therefore lacks standing when funds found in the box are seized. *See United States v. Fifteen Thousand Five Hundred Dollars,* 558 F.2d 1359, 1361 (9th Cir.1977). And the driver of a camper truck who denies that he owns a hoard of money he is transporting does not necessarily suffer injury when the money is seized and so also lacks Article III standing. *See United States v. $321,470.00, U.S. Currency,* 874 F.2d 298, 303–04 (5th Cir.1989). Although these decisions do not speak in terms of injury, the absence of demonstrated injury underlies them all.

■ Because ownership is only evidence of direct injury, we need not decide the extent to which Perusa and Pan American "own" the money in their remittance accounts. It is clear in any event that Perusa and Pan American have produced other evidence of a "distinct and palpable injury" sufficient to give them standing under Article III. *See Warth,* 422 U.S. at 501, 95 S.Ct. 2197. They had a financial stake in the funds because they had a liability to their customers in an amount equal to the forfeited funds. Those liabilities exposed them to substantial economic loss, if they made up the shortfall created by the forfeitures, or to potential loss of the bonds that they were required to post according to New York law in order to operate as money transmitters. Substantial economic harm is plainly the type of injury for which parties may seek redress in federal court. *See, e.g., Bastek v. Federal Crop Ins. Corp.,* 145 F.3d 90, 92 n. 1 (2d Cir.), *cert. denied,* — U.S. ——, 119 S.Ct. 539, — L.Ed.2d —— (1998). The injury that Pan American and Perusa assert is also the direct result of "putatively illegal" governmental action, *Gladstone, Realtors,* 441 U.S. at 99, 99 S.Ct. 1601, in the form of an allegedly unlawful forfeiture. This injury would be redressed by a successful challenge to the forfeiture. Article III does not require more.

To deny Pan American and Perusa the right to seek redress for their alleged injuries would raise serious due process concerns. *See, e.g., Degen v. United States,* 517 U.S. 820, 822, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) ("In an ordinary case a citizen has a right to a hearing to contest the forfeiture of his property, a right secured by the Due Process Clause."); *United States v. James Daniel Good Real Property,* 510 U.S. 43, 48–49, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) ("[I]ndividuals must receive notice and an opportunity to be heard before the Government deprives them of property."). Where money transmitters such as Perusa and Pan American, under threat of losing a substantial bond, comply with their legal obligations by paying the intended recipients of the funds deposited in their accounts, and the government—and we assume for standing purposes wrongfully—sweeps those accounts and seizes their contents, claimants are left with a substantial loss caused by unwarranted action by federal prosecutors and a federal court that claimants are wholly powerless to rectify. In the case at bar, no other party, save Cambio Exacto whose lack of direct injury and procedural default are discussed elsewhere, appears to have suffered any injury at all; none has come forward to say the money seized belongs to it. If the money transmitter is without standing, the government would not be accountable to anyone under the circumstances.

Since Pan American and Perusa satisfy the requirements for standing, we reverse the lower court's order dismissing their claims.

■ Cambio Exacto's payments to the recipients designated by Perusa's customers in advance of receiving money from Perusa, on the other hand, do not give rise to Article III standing to challenge the forfeiture of funds in Perusa's account. *See United States v. All Funds in Name of Kahn,* 955 F.Supp. 23, 25–26 (E.D.N.Y.1997) (correspondent that advances transmitted funds lacks standing to challenge forfeiture of money transmitter's account), *aff'd mem.,* 129 F.3d 114, 1997 WL 701366 (2d Cir.1997). If Cambio Exacto properly paid the recipients, it may have a claim of reimbursement against Perusa, but not against the government. Specifically,

Cambio Exacto fails to demonstrate an injury that resulted directly from the conduct of the government or that would be redressed by a successful challenge to the forfeiture of the defendant funds, which would result in their return to Perusa, not Cambio Exacto. Since it does not have standing, we affirm the order of the lower court denying Cambio Exacto leave to file a late notice of claim.

 Moreover, "[s]trict compliance with Supplemental Rule C(6) is typically required." *Amiel,* 995 F.2d at 371. The district court, in refusing to permit Cambio Exacto to file a notice of claim out of time and thereby acquire statutory standing, did not abuse its discretion in insisting that Cambio Exacto adhere to the Supplemental Rule.

Finally, we dismiss the appeal of Pan American's motion to amend its claim to allege that it was a bailee of the funds in question. It sought to do so only to establish Article III standing. Since we hold it has standing without making that claim, the order denying the motion is moot.

### III. Motions to Dismiss and for Summary Judgment

The summary judgment granted in the government's favor below was a final judgment. It was therefore appealable. 28 U.S.C. § 1291. Because, for the foregoing reasons, we now find that summary judgment was improper, we remand the case to the district court for further pre-trial proceedings if necessary, and for trial.

 The district court's order denying the motions by Perusa and Pan American to dismiss the government's claims and for summary judgment, which they seek to appeal, is not itself an appealable final judgment. *See, e.g., Group Health Inc. v. Blue Cross Ass'n,* 793 F.2d 491, 496 (2d Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 758 (1987). Nor are the factors relevant to the order so " 'inextricably intertwined' with the [appealable issue] or . . . 'necessary to ensure meaningful review' of that issue," *Kaluczky v. City of White Plains,* 57 F.3d 202, 207 (2d Cir.1995) (quoting *Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)), to allow us to exercise pendent appellate jurisdiction and hear that portion of the appeal. We therefore dismiss for lack of jurisdiction the appeal from the district court's order denying the motions by Perusa and Pan American to dismiss the government's claims and for summary judgment.

### CONCLUSION

We reverse the district court's order dismissing Perusa's and Pan American's claims for lack of standing and vacate the decrees of forfeiture of the funds held in their accounts. We affirm the order denying Cambio Exacto leave to file an untimely claim. We dismiss the appeal from the order denying the motions by Perusa and Pan American to dismiss the government's claims and for summary judgment. We also dismiss the appeal from the order denying Pan American's motion to amend its claim as moot. The case is remanded for further proceedings consistent with this opinion.