UNITED STATES of America,
Plaintiff,

v.

ONE HUNDRED THIRTY–EIGHT THOUSAND, THREE HUNDRED EIGHTY–ONE DOLLARS IN U.S. CURRENCY ($138,381.00), SEIZED ON OCTOBER 24, 1996, AT JOHN F. KENNEDY INTERNATIONAL AIRPORT FROM JOSE M. AGUDELO–GARCIA, Defendant.

No. 98–CV–4747 (RJD/JMA).

United States District Court,
E.D. New York.

Jan. 14, 2003.

F. Franklin Amanat, Assistant United States Attorney, Brooklyn, NY.

John Nicholas Iannuzzi, Law Offices of Iannuzzi & Iannuzzi, New York, NY.

*MEMORANDUM AND ORDER OF SUMMARY JUDGMENT, DECREE OF FORFEITURE, AND ORDER OF DELIVERY*

DEARIE, District Judge.

WHEREAS:

1. On July 16, 1998, plaintiff the United States of America filed a verified complaint in the above-captioned proceeding, seeking civil forfeiture of the defendant *in rem*—to wit, the $138,381 in United States currency which the government seized from Jose Manuel Agudelo–Garcia ("Agudelo") on October 24, 1996, plus the $5,000 cost bond which Agudelo posted on February 2, 1998—pursuant to 31 U.S.C. § 5317(c) (1983 & Supp.1998) and the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure;

2. On July 21, 1998, the Honorable Joan M. Azrack, Chief United States Magistrate Judge for the Eastern District of New York, issued a warrant for the arrest of the currency *in rem*, pursuant to which the United States Customs Service ("Customs") took the defendant currency into its custody;

3. Customs published legal notice of the forfeiture proceedings, and of the arrest of the currency *in rem*, in *Newsday* on August 14, 21, and 28, 1998;

4. On August 7, 1998, Agudelo filed an unverified notice of claim to the defendant

currency *in rem*, seeking return of the currency pursuant to 19 U.S.C. § 1608 and Rule C of the Supplemental Rules, as well as a verified answer to the verified complaint;

5. On August 13, 1998, the verified complaint and the warrant of arrest were served on Agudelo's counsel via certified mail;

6. On August 25, 1998, Agudelo filed an unverified amended notice of claim, which was also signed by Yolanda Castro ("Castro");

7. On January 18, 2002, plaintiff the United States of America served notice of its motion to strike Agudelo's unverified amended claim and verified answer, including any portion of said claim putatively ascribable to Castro, and also served notice of its motion for summary judgment and for entry of a final decree of forfeiture and order of delivery;

8. By order dated December 13, 2001, this Court referred the government's motion to Chief Magistrate Judge Azrack for a report and recommendation;

9. After receiving full briefing on the government's motion, Chief Magistrate Judge Azrack issued a Report and Recommendation on September 19, 2002, recommending, *inter alia,* (a) that the government be granted summary judgment as to Agudelo's claim by default, as the result of Agudelo's failure to file papers in opposition to the government's motion for summary judgment, pursuant to Local Civil Rule 56.1; (b) that the government be granted summary judgment as to Agudelo's claim, pursuant to the fugitive disentitlement provision set forth at 28 U.S.C. § 2466(a); (c) that the government be granted summary judgment as to Agudelo's claim, because he lacks both statutory and Article III standing to contest the forfeiture of the defendant *in rem;* (d) that the government be granted summary judgment as to any portion of Agudelo's claim putatively ascribable to Castro, as the result of Castro's failure to comply with the Local Rules governing motions for summary judgment; (e) that the government be granted summary judgment as to any portion of Agudelo's claim putatively ascribable to Castro, because she lacks both statutory and Article III standing to contest the forfeiture of the defendant *in rem;* (f) that all other potential claimants be found to be in default; (g) that summary judgment be entered for the United States; and (h) that a final decree of forfeiture and order of delivery be issued;

10. A copy of Chief Magistrate Judge Azrack's Report and Recommendation is annexed hereto as Exhibit 1;

11. Pursuant to 28 U.S.C. § 636(b)(1) and FED. R. CIV.P. 6(a), 6(e), 72(b), any party wishing to object to the Chief Magistrate Judge's Report and Recommendation had until October 7, 2002, to file written objections to the Report and Recommendation;

12. No party served or filed written objections to the Chief Magistrate Judge's Report and Recommendation by October 7, 2002; and

13. This Court finds Chief Magistrate Judge Azrack's Report and Recommendation to be correct as a matter of fact and law in all particulars, and further finds that there are grounds to grant the government's motion, as set forth in the Report and Recommendation,

IT IS NOW, HEREBY, ORDERED, ADJUDGED, AND DECREED, based upon all papers filed and proceedings had herein, as follows:

1. Chief Magistrate Judge Azrack's Report and Recommendation is accepted in full and is adopted as a Memorandum and Order of this Court.

2. Agudelo's unverified amended claim to the defendant *in rem,* Agudelo's verified

answer, and any portion of said claim putatively ascribable to Castro, are all hereby stricken and dismissed with prejudice, for the reasons set forth in the Report and Recommendation.

3. Plaintiff the United States is awarded summary judgment as to Agudelo's unverified amended claim to the defendant *in rem,* and any portion of said claim putatively ascribable to Castro, for the reasons set forth in the Report and Recommendation.

4. All other potential claimants to the defendant *in rem,* including all other persons known or thought to have an interest in or claim to the defendant *in rem,* having been given due notice of these proceedings, are hereby held to be in default pursuant to FED. R. CIV. P. Supp. Rules A, C.

5. Pursuant to 31 U.S.C. § 5317(c) (1983 & Supp.1998), the defendant currency in the sum of $138,381, together with the cost bond in the sum of $5,000 which Agudelo posted on February 2, 1998, are hereby forfeited and condemned to the use and benefit of the United States of America for the reasons set forth in the verified complaint *in Rem* and in the Report and Recommendation.

6. Pursuant to 31 U.S.C. § 9703, the Department of the Treasury and its agencies, including, but not limited to, the United States Customs Service, are hereby directed to dispose of the defendant currency and the forfeited cost bond in accordance with all applicable laws and regulations.

7. The Clerk of the Court is hereby instructed to enter judgment for the United States in accordance with this Order and to forward four certified copies of this Order to the United States Attorney for the Eastern District of New York, Attention: Assistant United States Attorney F. Franklin Amanat, One Pierrepont Plaza, 16th Floor, Brooklyn, New York 11201–

2776. The Clerk of the Court may then close this case.

*Report and Recommendation*

AZRACK, United States Magistrate Judge.

By order dated December 13, 2001, the Honorable Raymond Dearie referred to me for report and recommendation Plaintiff's motion for summary judgment in the instant action. For the reasons contained herein, I recommend that Plaintiff's motion for summary judgment be granted, and a final decree of forfeiture and order of delivery be issued.

## BACKGROUND

On October 24, 1996, claimant Jose Manuel Agudelo–Garcia ("Agudelo") attempted to transport $131,200 in checked baggage, and $7,181 on his person, while declaring to customs inspectors that he was transporting a total of $7,000 on the flight from New York City to Bogota, Columbia. When customs inspectors, using X-ray equipment, discovered the $131,200 in Mr. Agudelo's checked baggage, he was removed from the airplane and arrested for violating 31 U.S.C. §§ 5316, 5317. The inspectors seized the $131,200 from his checked baggage, and the $7,181 on his person. On February 7, 1997, Mr. Agudelo pled guilty to knowingly and willfully failing to file a report, as defined in 31 U.S.C. § 5316(b), when knowingly transporting monetary instruments of more than $10,000 at one time from a place within the United States to a place outside the United States, in violation of 31 U.S.C. § 5316, and 18 U.S.C. § 3551. In his guilty plea allocution, Mr. Agudelo stated that he was offered $4,000 to take the money to Columbia. He also stated that he did not know exactly how much money he was transporting, but he was told that it was $100,000. On August 1, 1997, Mr.

Agudelo was sentenced to two years of supervised probation.

On April 4, 1997, Mr. Agudelo filed an administrative notice of claim seeking the return of the $138, 381 seized from him at the time of his arrest. In addition, he sought a waiver of the requirement that he post a $5,000 cost bond on the grounds that he could not afford to pay the bond. In his sworn affidavit in support of his waiver request, Mr. Agudelo stated that the maximum annual income he had earned since coming to the United States in August, 1986 was $19,000. In his deposition in the instant action, Mr. Agudelo stated that he never brought any money or assets into the United States from Colombia. Mr. Agudelo's expenses include: $100 to $150 per week he sent to support his children in Columbia, an unspecified amount of rent on a house in Columbia where his wife and children live, $80 per week in rent on the Brooklyn apartment where he lived with Yolanda Castro and his cousin, and approximately one-third of the total household expenses of $1100 on that apartment. Ms. Castro's tax returns from 1991 to 1997 reflect an annual adjusted gross income ranging from $1,106 to $16,477, with a total for that period of $46,596. In her deposition in the instant case, Ms. Castro approximated her monthly expenses at around $600.

On July 16, 1998, the United States filed a verified complaint in the instant case seeking civil forfeiture of the defendant *in rem*—the $138,381 seized from Mr. Agudelo, and the $5,000 cost bond he had posted after his waiver request was denied. On July 21, 1998, this court issued a warrant for the arrest of the currency *in rem*. On August 13, 1998, the warrant and the complaint were served on Mr. Agudelo's counsel via certified mail. Customs published legal notice of the forfeiture proceedings, and of the arrest of the currency *in rem*,

in *Newsday*, on August 14, 21, and 28, 1998.

On August 7, 1998, Mr. Agudelo filed an unverified notice of claim to the defendant *in rem*, and a verified answer to the verified complaint. In his claim, Mr. Agudelo did not assert that he was the owner of the defendant *in rem*, but rather that he was lawfully in possession of the currency. On August 25, 1998, an unverified amended notice of claim was filed stating in pertinent part: "Now come, JOSE MANUEL AGUDELO–GARCIA, the Claimant, and YOLANDA CASTRO, his wife.... At all relevant times, Claimant and his wife were then and there lawful owners of the Defendant-in-rem...." This document bears the notarized signatures of both Mr. Agudelo and Ms. Castro under the closing "CLAIMANT." No amended answer was ever filed subsequent to the filing of the amended notice of claim, and no verified answer signed by Ms. Castro has ever been filed in this civil action.

On December 8, 1999, Mr. Agudelo was sentenced to nine months in prison for violating the terms of his probation. The violation was based on Judge Dearie's finding that sworn testimony given by Mr. Agudelo in a deposition in the instant case, wherein he claimed ownership of the defendant *in rem*, constituted perjury in light of his guilty plea allocution and other evidence that he lacked the means to accumulate such a sum of money. Mr. Agudelo was ordered to surrender to the United States Marshals Service on December 27, 1999. Mr. Agudelo never surrendered and remains a fugitive from justice. On January 5, 2000, Judge Dearie issued a warrant for Mr. Agudelo's arrest.

## DISCUSSION

I. *Mr. Agudelo's Claim*

A. *Summary Judgment By Default*

Mr. Agudelo has not filed papers in opposition to the government's motion for

summary judgment. The Second Circuit Court of Appeals has stated that the "fact that there has been no response to a summary judgment motion does not... mean that the motion is to be granted automatically. Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (quoting Fed. R.Civ.P. 56(c)). This recognizes that the initial burden is upon the moving party to prove that it is entitled to judgment as a matter of law. However, courts in the Second Circuit "have granted summary judgment by default where a party has failed to respond to the motion in violation of court rules and/or scheduling orders." *In re Towers Fin. Corp. Noteholders Litig.,* 996 F.Supp. 266, 273–74 (S.D.N.Y. 1998) (citing a multitude of cases). Here, claimant Agudelo has violated Local Civil Rule 56.1, which requires that a party opposing summary judgment provide a separate statement indicating the material facts which are in dispute. Local Civil Rule 56.1(c) further provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

■ In the present case, the movant's statement of undisputed material facts includes the fact that Mr. Agudelo knowingly failed to declare the cash located in his baggage. (¶17). This fact, if true, precludes Mr. Agudelo from validly challenging the government's seizure of the defendant *in rem.* Under 31 U.S.C. § 5316, failure to report the transport of more than $10,000 in currency from within the United States to a destination outside the United States subjects the unreported currency to seizure and forfeiture. Thus, movant's undisputed fact that Mr. Agudelo knowingly failed to declare the $138,381.00

(¶17), now deemed admitted since claimant Agudelo failed to file a statement of disputed facts pursuant to Local Rule 56.1, is sufficient to entitle movant to summary judgment as a matter of law.

B. *Summary Judgment on the Merits*

■ Even if Mr. Agudelo's failure to submit a statement of disputed facts is overlooked, movant would be entitled to summary judgment as a matter of law because Mr. Agudelo is indisputably a fugitive from justice. 28 U.S.C. § 2466(a) provides:

A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action... upon a finding that such person—

(1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution -

(A) purposefully leaves the jurisdiction of the United States;

(B) declines to enter or reenter the United States to submit to its jurisdiction; or

(C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and

(2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

Judge Dearie found that Mr. Agudelo committed perjury in his deposition in the present case. Pl. Exh. 25. On December 8, 1999, he ordered Mr. Agudelo to surrender to Marshals by noon on December 27, 1999, to begin his term of imprisonment on the violation of probation. *Id.* Mr. Agudelo has not, as yet, surrendered himself to the Marshals. Pl. Exh. 29. On January 5, 2000, Judge Dearie issued a warrant for

Mr. Agudelo's arrest for failure to surrender to the Marshals. Pl. Exh. 27. Based on these facts, Mr. Agudelo meets all the criteria for being a fugitive barred from using the resources of the courts of the United States.

First, this civil forfeiture proceeding is clearly related to the criminal matter upon which Mr. Agudelo remains a fugitive. Mr. Agudelo pled guilty to knowingly failing to report the transport of more than $10,000 from a location within the United States to a destination outside the United States, in violation of 31 U.S.C. § 5316. For that crime, Mr. Agudelo was sentenced to two years of probation. Pl. Exh. 22, 28. However, his perjury in the present case violated his probation and subjected him to a prison sentence. Thus, this civil forfeiture proceeding, in which he seeks the return of the seized funds that he was convicted of transporting out of the country, is clearly related to the criminal matter for which he is sought.

Second, Mr. Agudelo certainly has notice that a warrant has been issued for his arrest. At Mr. Agudelo's hearing for violation of probation, Judge Dearie made it clear that failure to surrender himself to the Marshals would make him subject to arrest. Pl. Exh. 25. Third, Mr. Agudelo's continued failure to surrender himself to begin his term of custody establishes that he has either left the United States, refused to reenter the United States, or otherwise evaded the jurisdiction of Judge Dearie's court. Finally, there is no evidence that he is confined in another jurisdiction. As a result, the movant is entitled to summary judgment as a matter of law with respect to Mr. Agudelo's claim.

## II Ms. Castro's Claim

### A. Failure to Comply with the Local Rules

Before discussing the merits of Ms. Castro's case, it should be noted that her papers in opposition to Plaintiff's motion for summary judgment are not in compliance with the Local Civil Rules. First, her failure to include a memorandum of law violates Local Civil Rule 7.1, which reads "all motions and all oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion. . . . Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default." The papers submitted by Ms. Castro take the form of an attorney affirmation, not a memo of law.

In addition, Ms. Castro's papers, including her statement of disputed material facts made pursuant to Local Civil Rule 56.1, are substantively defective because they are unsupported by affidavits based on personal knowledge or otherwise admissible evidence as required by Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d). Local Civil Rule 56.1(d) states, "[e]ach statement of material fact by a movant or *opponent* must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." (emphasis added). Such requirements are especially relevant in forfeiture proceedings. *See Mercado v. U.S. Customs Service*, 873 F.2d 641, 645 (2d Cir.1989) ("Because there is a substantial danger of false claims in forfeiture proceedings, more was required than the conclusory, hearsay, on-information-and-belief statements of Mercado's lawyer") (citations omitted). This defect, therefore, renders all movant's *alleged* undisputed facts, undisputed *in fact.* As a result of these procedural and substantive defects, the plaintiff's motion for summary judgment should be granted by default. However, in the interests of thoroughness this court will reach the merits of the issues raised by plaintiff's motion

for summary judgment and the opposition papers submitted by Ms. Castro.

### B. *Standing in a Judicial Forfeiture Proceeding*

■ Whether a claimant has standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *In re Gucci,* 126 F.3d 380, 387–88 (2d Cir.1997) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In order to maintain a claim against property involved in a judicial forfeiture proceeding, claimants must have both standing under the statutes governing their claim, and standing under Article III of the Constitution. *United States v. Cambio Exacto, S.A.,* 166 F.3d 522, 526 (2d Cir.1999). While lack of statutory standing can be excused at the sound discretion of the trial judge, Article III standing is a prerequisite for a court to attain subject matter jurisdiction over a matter. *United States v. Premises and Real Property at 4492 South Livonia Rd.,* 889 F.2d 1258, 1262 (2d Cir.1989).

### 1. *Statutory Standing*

■ A judicial forfeiture proceeding is an action *in rem. United States v. U.S. Currency in the Amount of $2,857.00,* 754 F.2d 208, 212 (7th Cir.1985). The Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules") apply to actions *in rem. See* Fed.R.Civ.P., Supp. Rule A(2). Thus, it is well settled that the Supplemental Rules apply to civil forfeiture proceedings. *See Cambio Exacto,* 166 F.3d at 526 n. 3. The Federal Rules of Civil Procedure also apply to civil forfeitures except to the extent that they are inconsistent with the Supplemental Rules. Fed.R.Civ.P., Supp. Rule A. Supplemental Rule C(6) sets forth the procedural requirements that a claimant must comply with to establish standing to contest an *in rem* forfeiture proceeding. *Mercado,* 873 F.2d at 645.

### (a) *Timeliness of Claim*

■ The version of Supplemental Rule C(6) in effect at all times pertinent to this action provides, in pertinent part:

> The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.

Fed.R.Civ.P., Supp. R. C(6) (1992). Under this rule, a claimant's 10 day time period within which to file a claim begins to run when he is served with notice of the seizure, and the warrant for the arrest of defendant *in rem* has actually been executed. *United States v. Approximately Two Thousand, Five Hundred Thirty–Eight Point Eighty–Five Shares of Stock Certificates of the Ponce Leones Baseball Club, Inc.,* 988 F.2d 1281, 1288 (1st Cir.1993). On August 13, 1998, claimant Agudelo was served with notice of the seizure, together with the complaint in the instant action, by certified mail addressed to his attorney. Pl. Exh. 15. Plaintiff argues that since Mr. Agudelo and Ms. Castro share counsel, Ms. Castro's time to file a claim began to run on August 13, 1998 as well. Even if this is the case, which is doubtful, Ms. Castro and Mr. Agudelo had until August 31, 1998 to timely file a claim. Under Federal Rule of Civil Procedure 6(e), whenever a party is required to do some act within a prescribed period after the service of a notice upon the party, and the notice is served upon the party by mail,

three days are added to the prescribed period. In addition, Federal Rule of Civil Procedure 6(a) provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Applying these rules, Ms. Castro had until August 31, 1998 to file a timely claim, assuming that her time began to run on August 13.[1]

If, as is likely, the August 13 service was not applicable to Ms. Castro, then her time to file a claim began to run on the date she saw the published notice or, if she never saw the published notice, on the last day that notice was published. In this case, notice was last published on August 28, 1998. Pl. Exh. 16. Therefore, the last possible date Ms. Castro could have filed a timely claim was 10 days from August 28, 1998. Keeping in mind Rule 6 of the Federal Rules of Civil Procedure, at best Ms. Castro had until September 17, 1998 to file a notice of claim. Since Ms. Castro's only purported claim was filed on August 25, 1998, that claim is timely and all other as yet unmade claims are untimely under any view. Having determined that the August 25 Amended Notice of Claim was timely filed, this court must determine whether it was otherwise sufficient under Supplemental Rule C(6) to establish statutory standing for Ms. Castro.

(b) *Verification Requirement for Claims*

 In addition to the timing requirements of Supplemental Rule C(6), claims in a forfeiture proceeding must also be verified on oath or solemn affirmation. Because there is a substantial danger of false claims in forfeiture proceedings, *Mercado*, 873 F.2d at 645, verification on oath or solemn affirmation is an essential element of a claim under Rule C(6). *United States v. U.S. Currency in the Amount of $2,857.00*, 754 F.2d 208, 213 (7th Cir.1985). Here, the Amended Notice of Claim filed on August 25 was signed by Mr. Agudelo and Ms. Castro, but was not verified on oath or affirmation by either of them. Pl. Exh. 19. Thus, it fails to meet one of the procedural requirements for statutory standing.

(c) *Whose Claim was it?*

Perhaps more importantly, the Amended Notice of Claim does not clearly identify Ms. Castro as a claimant. Supplemental Rule C(6) requires that *each* claimant file a claim in conformity with its procedures. Mr. Agudelo filed a notice of claim on August 7, 1998 which states "Now comes, JOSE MANUEL AGUDELO–GARCIA, the Claimant," and declares that "[a]t all relevant times, Claimant was then and there lawfully in possession of the Defendant-in-rem . . . ." Pl. Exh. 17. The Notice of Claim was signed by Mr. Agudelo under the closing "CLAIMANT." *Id.* On August 25 an Amended Notice of Claim was filed. It states "Now come, JOSE MANUEL AGUDELO–GARCIA, the Claimant, and YOLANDA CASTRO, his wife," and declares that "[a]t all relevant times, Claimant and his wife were then and there lawful owners of the Defendant-in-rem . . . ." Pl. Exh. 19. The Amended Notice of Claim was signed by both Mr. Agudelo and Ms. Castro under the closing "CLAIMANT" (singular). *Id.* In all other respects the two claims are identical.

Because the Amended Notice of Claim does not identify Ms. Castro as a claimant, instead referring to her as Mr. Agudelo's wife,[2] and it continues to refer to Mr.

---

1. For an in depth discussion of how to combine the additional three days to a time period of less than 11 days see *Moore's Federal Practice 3rd Edition* § 6.05[2].

2. Mr. Agudelo is actually married to Livia Cardona–Carrera not Ms. Castro.

Agudelo as the "Claimant" (singular), it is unlikely that the Amended Notice of Claim was even intended to serve as a claim on behalf of both Mr. Agudelo and Ms. Castro jointly. It appears that the Amended Notice of Claim was in fact intended to remedy a deficiency in Mr. Agudelo's original notice of claim: namely Mr. Agudelo's failure to claim ownership of the defendant *in rem*. Mr. Agudelo's August 7 Notice of Claim stated that Mr. Agudelo was merely in lawful possession of the defendant *in rem* at all relevant times, but failed to claim an ownership interest in the currency. Pl. Exh. 17. As such, Mr. Agudelo would have lacked Article III standing to contest the forfeiture. Thus, the Amendment was designed to remedy that defect in his previous Notice of Claim.

■ Regardless of the intent of the Amended Notice of Claim, its effect fell well short of fulfilling an important function of the procedural requirements of Supplemental Rule C(6): notifying the government and the court that the claimant is entitled to join the action. *See* *$2857.00,* 754 F.2d at 213; *United States v. $175,918.00 in United States Currency,* 755 F.Supp. 630, 632 (S.D.N.Y.1991) ("This rule is designed to provide the government with timely notice of a claimant's interest in contesting the forfeiture and, by requiring a sworn claim, to deter the filing of false claims.") (citations omitted). In addition to the facts that the Amended Notice of Claim failed to identify Ms. Castro as a claimant, and referred to Mr. Agudelo as CLAIMANT (singular), the very title of Ms. Castro's purported claim, "Amended Notice of Claim," indicates that it is was an amendment to a previous claim. Pl. Exh. 19. Since Ms. Castro had not previously filed a notice of claim, the Amended Notice of Claim was insufficient to put the government or the court on notice that a new claimant was entering the case.

### (d) *Verified Answer Required*

■ Even if this court were to construe the Amended Notice of Claim to include Ms. Castro as a claimant, she would still lack statutory standing based on her failure to file a timely verified answer to the government's verified complaint. Supplemental Rule C(6) requires a claimant to "serve an answer within 20 days after the filing of the claim." Fed.R.Civ.P., Supp. R. C(6). Ms. Castro has never served an answer in this case. She now contends that Mr. Agudelo's August 7 answer should be deemed to apply retroactively to her claims in light of the Amended Notice of Claim which purports to represent a joint claim by Mr. Agudelo and Ms. Castro. This argument must fail. Mr. Agudelo's answer cannot serve as Ms. Castro's answer because unlike the claim required in a forfeiture proceeding, the answer cannot be generic; it is a party's direct response to specific factual allegations. The August 7 answer was completed at the direction of Mr. Agudelo, not Ms. Castro. Its denials and admissions are those of Mr. Agudelo, not Ms. Castro. It does not assert any claims, defenses, or demands on her behalf. Finally, the answer was not signed nor verified under oath by Ms. Castro. As a result, Mr. Agudelo's August 7 answer cannot be construed to serve as Ms. Castro's answer simply because the Amended Notice of Claim mentions Ms. Castro as a part owner of the defendant *in rem*.

### (e) *Judicial Discretion to Excuse Defects in Claim and Answer*

Even though it is clear from the foregoing discussion that Ms. Castro has failed to comply with the procedural requirements of Supplemental Rule C(6), the trial court has discretion to excuse such noncompliance. Although strict compliance with Supplemental Rule C(6) is typically re-

quired, a court has discretion in appropriate circumstances to depart from the strict compliance standard. *United States v. Amiel,* 995 F.2d 367, 371 (2d Cir.1993) (citations omitted). *See also 4492 South Livonia Road,* 889 F.2d at 1262 ("When... a claimant has made a sufficient showing of interest in the property through filing with the court a motion and accompanying affidavits, technical noncompliance with the procedural rules governing the filing of claims may be excused."). Both cases are also consistent with *Cambio Exacto,* 166 F.3d 522 (holding that a District Judge had not abused his discretion by requiring strict compliance with Supplemental Rule C(6)). In light of its procedural posture, it cannot be said that *Cambio Exacto* requires strict compliance with the procedures outlined in Supplemental Rule C(6); it remains subject to the sound discretion of the trial judge.

In the present case, however, Ms. Castro has failed to give sufficient grounds for her request that the court exercise its discretion to relieve her of the harsh consequences emanating from her failure to file a valid claim and answer in accordance with Supplemental Rule C(6). Courts typically exercise their discretion when claimants have timely placed the court and government on notice of their interest in the property and intent to contest the forfeiture, recognizing both the good-faith effort put forth and the lack of prejudice to the government under such circumstances. *$175,918.00,* 755 F.Supp. at 633 (citing *United States v. U.S. Currency in the Amount of $103,387.27,* 863 F.2d 555, 562 (7th Cir.1988)). Thus, in *$175,918.00,* the court granted an incarcerated pro se claimant an extension of time to file because he had been diligent in pursuing his rights through litigation, he had timely communicated his interest in the currency to the court and the government, and the government would not be prejudiced by the extension since it had timely notice of

claimant's intent to contest the forfeiture and did not dispute that claimant had a sufficient ownership interest in the property to be a proper claimant. 755 F.Supp. at 633.

Here, Ms. Castro has not been diligent in pursuing her rights in this case. Although represented by counsel from the outset, she has failed to follow the formal procedures for filing a proper claim, and has filed no answer. In addition, because of the vagueness of the Amended Notice of Claim, neither the court nor the government were aware that Ms. Castro was a claimant. Finally, there is clearly a dispute as to Ms. Castro's ownership interest in the property. Therefore, unlike in *$175,918.00,* the government *would* be prejudiced if Ms. Castro were allowed to file an answer and pursue a claim at this late juncture.

Other discretionary factors considered by courts, including 1) the time at which the claimant became aware of the seizure, 2) whether the government encouraged the delay, 3) the reasons proffered for the delay, 4) the sufficiency of the answer in meeting the basic requirements of a verified claim, and 5) whether the claimant timely petitioned for an enlargement of time, *United States v. One (1) 1979 Mercedes 450SE Vehicle,* 651 F.Supp. 351, 353 (S.D.Fl.1987) (citations omitted) also weigh against granting Ms. Castro relief. First, Ms. Castro became aware of the seizure almost immediately. Castro Depo. 31: 9–13. Second, the government did not encourage Ms. Castro's failure to file the answer. Third, Ms. Castro's reason for not answering the complaint is that she thought that Mr. Agudelo's previous answer would be retroactively applied to her once the Amended Notice of Claim was filed. As discussed fully above, such a suggestion is clearly erroneous, and probably disingenuous considering that she was represented by counsel at the time. The

fourth factor is inapplicable since no answer was filed by Ms. Castro. Fifth, Ms. Castro never petitioned for an extension of time to file her answer. Thus, this court sees no legitimate reason for exercising its discretion to excuse Ms. Castro's failure to file a timely answer. As a result, Ms. Castro lacks the requisite statutory standing to contest the forfeiture of the defendant *in rem.*

### 2. *Article III Standing*

 In contrast to statutory standing, the requirements for Article III standing cannot be excused at the discretion of the trial judge. "Because Article III of the Constitution limits the subject-matter jurisdiction of federal courts to 'Cases' and 'Controversies,' a litigant must also demonstrate constitutional standing: a 'sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'" *Cambio Exacto,* 166 F.3d at 526 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 731, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). To establish standing under Article III a claimant must allege a distinct and palpable injury to himself that is the direct result of the putatively illegal conduct of the adverse party and likely to be redressed by the requested relief. *Cambio Exacto,* 166 F.3d at 527 (internal citations omitted). In a forfeiture proceeding, a claim of ownership will establish a claimant's standing to challenge the forfeiture of his property. *Id.* When the government moves for summary judgment in a forfeiture proceeding, that claim of ownership will be scrutinized in a manner consistent with the principles of Rule 56 of the Federal Rules of Civil Procedure.

### (a) *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56, a motion for summary judgment may only be granted when the evidence, which is to be viewed in the light most favorable to the non-movant, presents no genuine issue of material fact. *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996); Fed.R.Civ.P. 56(c). The movant bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Adams v. Dept. of Juvenile Justice,* 143 F.3d 61, 65 (2d Cir.1998). The burden then shifts to the non-movant who must then come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires that affidavits on a motion for summary judgment be based on personal knowledge and admissible evidence. *See 4492 South Livonia Rd.,* 889 F.2d at 1267. A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Mere conclusory allegations, speculation or conjecture, however, will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).

### (b) *No Evidence of Ownership*

 In the present case, Ms. Castro can prove no set of facts which would establish her ownership of the defendant *in rem,* and cannot otherwise demonstrate an injury-in-fact stemming from the seizure of the defendant *in rem.* As such, she lacks Article III standing to contest the forfeiture. Ms. Castro's claimed injury stemming from the seizure of the defendant *in rem,* rests solely on her contention that she jointly owns the defendant *in rem* with Mr. Agudelo. In an attempt to demonstrate that she and Mr. Agudelo jointly had the economic means to accumulate the currency seized, Ms. Castro alleges the following facts in her Statement of Material Facts Pursuant to Local Civil Rule 56.1: 1) she and Mr. Agudelo shared their finan-

cial resources, 2) she has worked as a seamstress, beautician, caterer, and owner of Yomocol Taxi Rental Company over the course of the nearly 12 years she has lived in the United States, 3) she was the recipient of a $40,000 divorce settlement from a previous marriage in Colombia, 4) she had $5,000 in personal savings when she arrived in the United States in 1984, and 5) she won $5,000 from the lottery in 1996. None of these conclusory allegations, however, are supported by any evidence. As such, they fail to meet the claimant's burden of providing evidence of an injury-in-fact stemming from the forfeiture.

(c) *Claimants Lacked Financial Means to Accumulate $138,381*

Moreover, the government has provided substantial evidence to refute the ultimate conclusion urged by Ms. Castro—that she and Mr. Agudelo jointly owned the defendant *in rem* at the time it was seized. Ms. Castro's first allegation, that she and Mr. Agudelo pooled financial resources, is not a material fact which would deny the proper grant of summary judgment in light of the overwhelming evidence that Mr. Agudelo did not have the financial means to contribute to the accumulation of any significant amount of money.

In April, 1997 Mr. Agudelo submitted an affidavit in support of his application to waive the cost bond required in the administrative forfeiture proceeding. Pl. Exh. 11. In that affidavit, Mr. Agudelo states that his maximum annual income since entering the United States in August, 1986 was $19,000. *Id.* In his April, 1997 presentence investigation report, Mr. Agudelo again stated that his income was approximately $19,000 annually. Pl. Exh. 8, ¶ 40. Mr. Agudelo has never filed a tax return in the United States. Agudelo Depo. 90:2–

91:3. In addition, his deposition reveals that Mr. Agudelo brought no money or assets with him when he entered the United States, and he did not bring any money into the United States on any of his trips from Colombia. Agudelo Depo. 23:19–23, 81: 3–19.

Mr. Agudelo's expenses include: $100 to $150 per week he sent to support his children in Columbia (Pl.Exh. 8, ¶ 26), an unspecified amount of rent on a house in Columbia where his wife and children live (Agudelo Depo. 46:7–15), $80 per week in rent on the Brooklyn apartment where he lived with Ms. Castro and his cousin (Agudelo Depo. 18:9–17), and approximately one-third of the total household expenses of $1100 [3] on that apartment (Pl.Exh. 8). These expenses total between $13,760 and $16,360 annually, not including the unknown amount of rent paid on the Columbia residence. Therefore, in his best years, Mr. Agudelo could have netted between $2,640 and $5,240 annually in earnings after necessary expenses. These sums fall considerably short of establishing that Mr. Agudelo had the financial means to accumulate anywhere near the amount of money at stake in this case.

Ms. Castro's second allegation, that she worked numerous jobs during her twelve years in the United States, is also immaterial since the net earnings from those jobs was too small to accumulate any significant savings. Ms. Castro's tax returns from 1991 to 1997 reflect an annual adjusted gross income ranging from $1,106 to $16,477, with a total for that period of $46,596. Pl. Exh. 32. She also approximated her monthly expenses at around $600, Castro Depo. 64:6–65:6. Even assuming she had slightly lower expenses in previous years, she would not have accumulated any savings from 1991 to 1997.

---

**3.** This figure is arrived at by subtracting $580 rent and $600 child support from his total expenses of $2,280.

Thus, the fact that she was employed in various jobs is not a material fact which, if true, would establish her ownership of the defendant *in rem*.

Ms. Castro's third and fourth allegations—she entered the United States with $5,000 in 1984 and shortly thereafter received a divorce settlement in the amount of $40,000—are likewise immaterial in light of Ms. Castro's inability to establish how much of the original $45,000 remained at the time of the seizure. Even assuming that she had $45,000 shortly after entering the United States in 1984—a fact which Ms. Castro can't substantiate—she has no records, bank accounts, or other documents to establish how much money she had at the time of the seizure in 1997, over twelve years after she entered the United States. In light of her income and necessary expenses during that period of time, the amount of money she had in 1984 is immaterial to a determination of her financial ability to accumulate substantial savings before the seizure in 1996.

Ms. Castro's fifth allegation, that she won $5,000 from the lottery in 1996, is also not a material fact which would deny the proper grant of summary judgment because it is a small amount of money in relation to the amount that she is claiming she owns. Even assuming that Ms. Castro could substantiate the $5,000 in lottery winnings in 1996, that amount is minuscule in comparison to the $138,381 of which she is claiming joint ownership.

In light of the lack of affidavits or other evidence to support Ms. Castro's bald allegations of ownership of the defendant *in rem,* and the substantial evidence supplied by the government demonstrating that she and Mr. Agudelo lacked the financial means to accumulate such a sum of money, it is clear that no reasonable jury could find that Ms. Castro and Mr. Agudelo jointly owned the defendant *in rem.* As a result, summary judgment is appropriate because Ms. Castro has failed to establish constitutional standing to contest the forfeiture of the defendant *in rem.*

### CONCLUSION

For the foregoing reasons, I find that Mr. Agudelo and Ms. Castro lack both statutory and Article III standing to contest the government's seizure of the defendant *in rem.* I further find that all other potential claimants are in default. Accordingly, I recommend that summary judgment be entered for the United States, and that a final decree of forfeiture and order of delivery be issued.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1) (2000); Fed.R.Civ.P. 72, 6(a), 6(e).

Sept. 19, 2002.